# Exhibit 1

1  Whitney D. Ackerman Esq. (SBN: 284340)
   Jonathan A. Rapel, Esq. (SBN: 285893)
2  THE LAW OFFICE OF WHITNEY D. ACKERMAN
   858 S. Bedford St.
3  STE #301
   Los Angeles CA 90035
4  T: (818) 426 9591
5  F: (866) 610 6540
   Wackerma@gmail.com
6

**FILED**
Superior Court of California
County of Los Angeles

OCT 26 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ , Deputy
Judi Lara

7  Attorneys for Plaintiffs
   AOGC ALL OLYMPIA GYMNASTIC CENTER INC.,
8  ARTUR AKOPYAN, and GALINA MARINOVA
9
10         SUPERIOR COURT OF THE STATE OF CALIFORNIA
11  COUNTY OF LOS ANGELES - CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE
12

| | |
|---|---|
| ALL OLYMPIA GYMNASTIC CENTER INC., aka ALL OLYMPIA GYMNASTIC CENTER LOS ANGELES; a California business entity of form unknown; GALINA MARINOVA, an individual; ARTUR AKOPYAN, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE NASSAR, an individual; USA GYMNASTICS, an Indiana business entity of form unknown; THE UNITED STATES OLYMPIC COMITTEE, a Colorado business entity form known; MICHIGAN STATE UNIVERSITY, a Michigan business entity of form unknown; and DOES 1 – 500.<br><br>Defendant | Case No: **18STCV02484**<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>1) **BREACH OF CONTRACT (CIVIL CODE § 3300)**<br>2) **BREACH OF FIDUCIARY DUTY (CIVIL CODE § 3294)**<br>3) **FRAUD, DECEIT, CONCEALMENT, DECEPTIVE PRACTICES (CIVIL CODE § 1572, CIVIL CODE 1709-1710, CIVIL CODE 3294);**<br>4) **NEGLIGENCE (CIVIL CODE § 1714)**<br>5) **UNFAIR BUSINESS PRACTICES (BUSINESS & PROFESSIONS CODE § 17200);**<br>6) **CONSTRUCTIVE FRAUD (CIVIL CODE § 1573);**<br>7) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>8) **CONSPIRACY**<br>9) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>10) **INDEMNIFICATION (CIVIL CODE § 2772-2784)**<br>11) **TORT OF ANOTHER** |

1    **COMES NOW**, Plaintiff AOGC OLYMPIA GYMNASTICS CENTER; ARTUR AKOPYAN;

2    and GALINA MARINOVA, who complains and alleges as follows:

3                   **<u>GENERAL ALLEGATIONS AS TO THE PARTIES</u>**

4        1.      This action seeks to vindicate the rights of ARTUR AKOPYAN, and GALINA

5    MARINOVA, who owned and operated AOGC OLYMPIA GYMNASTICS CENTER aka

6    AOGC ALL OLYMPIC GYMNATICS CENTER LOS ANGELES, in Los Angeles, California.

7    The two Plaintiffs ARTUR AKOPYAN and GALINA MARINOVA dedicated much of their

8    adult lives to the teaching of gymnastics to elite level athletes.  AKOPYAN and MARINOVA

9    were committed to the development of young athletes and focused nearly all of their professional

10    time and effort to the operation, maintenance, and potential growth of the gymnasium known for

11    all times relevant to this action as AOGC OLYMPIA GYMNASTICS CENTER or AOGC ALL

12    OLYMPIC GYMNASTIC CENTER LOS ANGELES or AOGC Plaintiffs.

13        2.      The contractual relationship between AOGC OLYMPIA GYMNASTICS

14    CENTER, AOGC Plaintiffs and USA GYMNASTICS was born out of a desire to produce elite

15    level gymnasts who might one day compete on the world's brightest stage, the Olympics.  It was

16    through this contractual relationship that AOGC OLYMPIA GYMNASTICS CENTER became

17    unwittingly aquatinted with DR. LARRY NASSAR, an employee of MICHIGAN STATE

18    UNIVERSITY.   As a result of the contractual relationship and subsequent affiliation with USA

19    GYMNASTICS, AOGC OLYMPIA GYMNASTICS CENTER business was destroyed when

20    negative publicity surrounding the malicious and numerous sexual assaults committed by DR.

21    LARRY NASSAR falsely linked them to these deplorable acts.  The result of the negative

22    publicity was the complete and utter destruction of the finances and reputation of AOGC

23    OLYMPIA GYMNASTICS CENTER and the individual livelihood, careers of ARTUR

24    AKOPYAN and GALINA MARINOVA.

25    //

26    //

27    **THE PLAINTIFFS, AOGC OLYMPIA GYMNASTICS CENTER; ARTUR AKOPYAN;**

28                  **AND MALINA MARINOVA**

3.      Plaintiffs AOGC OLYMPIA GYMNASTICS CENTER; ARTUR AKOPYAN; and GALINA MARINOVA (herein after used interchangeable with "AOGC") were owner and operators of an elite level gymnastics training center located in the County of Los Angeles over 20 years.  The owners/operators of AOGC, ARTUR AKOPYAN and GALINA MARINOVA built the gymnastics facility from the ground up dedicating much of their time, effort, energy, and financial resources in the foundation, growth, maintenance, and operation of said facility. Both ARTUR AKOPYAN and GALINA MARINOVA were born in Eastern European countries from humble beginnings.  Pursuit of the American dream and the potential to create a successful gymnastics program brought them both to the United States of America with little or nothing except their professional reputation in the International Gymnastics Community.

4.      It was with this professional reputation that they built a successful million-dollar business and helped to produce elite level athletes to compete on the National and International level.  As a result of the negligent and intentional acts and omissions of the Defendants, AOGC Plaintiffs suffered financial ruin, loss of their successful business model, damage to their professional and personal reputation, and emotional damages due to embarrassment, anxiety, loss of sleep, and loss of self-worth.

5.      Plaintiffs is informed and believes that the intentional, criminal,  and malicious concealment of the sexual abuse, harassment, and molestation of its athletes by USA GYMNASTICS was the actual and proximate cause of the damages suffered.  During the entire time the athletes were being sexually assaulted by DR. LARRY NASSAR and the concurrent systematic concealment and cover-up by USA GYMNASTICS, AOGC Plaintiffs were located in the State of California as both residents and business location and operations.

**DEFENDANT, LAWRENCE NASSAR**

6.      Defendant Ex-Doctor Lawrence NASSAR, at all times mentioned herein was and is an adult male individual, who Plaintiffs are informed and believes lived and was licensed to practice medicine by the State of Michigan during the period of time during which the sexual abuse, harassment, and molestation of the athletes took place and is currently a citizen of the State of Michigan.  Plaintiff is informed and believes that NASSAR was accepted onto the staff

1   of USA GYMNASTICS as a trainer in 1986 and then as the National Medical Director and the

2   National Team Physician for the women's gymnastics team in 1996.  NASSAR continued to

3   function in this capacity at USA GYMNASTICS until in or around the middle of 2016.  At all

4   times herein alleged, NASSAR was an employee, agent, and/or servant of Defendant USA

5   GYMNASTICS, and MICHIGAN STATE UNIVERSITY, and/or was under their complete

6   control and/or supervision.

7         7.      Defendant NASSAR was working in some capacity for USA GYMNASTICS and

8   Michigan State University as a Physician and certified athletic trainer.  It was through this

9   working relationship and capacity that NASSAR became indirectly affiliated with AOGC

10   Plaintiffs.  AOGC Plaintiffs did not hire, contract, or employ NASSAR directly but were bound

11   to subject their athletes to him by virtue of their contractual relationship with USA

12   GYMNASTICS.  A material term of the contractual affiliation with USA GYMNASTICS was

13   that AOGC Plaintiffs were required to send their athletes to the Karolyis' training facility located

14   in the State of Texas, but at all times leased, controlled, staffed, and operated by USA

15   GYMNASTICS.  It was at this facility that AOGC Plaintiffs' athletes were sexually assaulted by

16   NASSAR.  It is AOGC Plaintiffs' belief that USA GYMNASTICS, THE UNITED STATES

17   OLYMPIC COMITTEE and MICHIGAN STATE UNIVERSITY,  and DOES 1 - 500 knew or

18   should have known that NASSAR was a sexual predator due to numerous complaints and

19   investigations and thus exposed AOGC Plaintiffs' athletes to NASSAR without AOGC

20   Plaintiff's knowledge or consent, and which has now permanently damaged their reputation and

21   livelihood.

22

23              **DEFENDANT, THE UNITED STATES OLYMPIC COMMITTEE**

24         8.      Defendant THE UNITED STATES OLYMPIC COMMITEE (herein after

25   "USOC") at all times mentioned herein was business entity of the State of Colorado,

26   whose form is currently unknown to AOGC Plaintiffs.  During the period of time which

27   the sexual abuse by NASSAR took place, the USOC and its board of directors charged

28   with the overall oversight, protection, management, and discipline for and over USAG.

AOGC Plaintiffs are informed and believe and, on that basis, alleges that Defendant USOC through its role and agency with USAG, knew of the abuses as early as the late 1990s and oversaw a wide-ranging, calculated concealment of numerous instances, complaints, and allegations of sexual abuse and misconduct from the participants and members of USA GYMNASTICS, including AOGC Plaintiffs. The USOC oversaw, controlled, and was in charge of prevention, safety and discipline at all times during which NASSAR was permitted to sexually abuse young underage females, and rather than take swift responsive action to stop the abuse, USOC systematically, refused and ignored the problem until it was too much to ignore. At all times herein alleged, Defendant USOC was the principal, controlling agent, body or entity, who sanctioned, permitted and contributed to the complete failures of USAG who was under USOC's complete control and/or active supervision.

9.   Plaintiff are informed and believe, and on that basis allege, that Defendant COLAROSSI had wide-ranging knowledge of the abusive, and harassing environment that was cultivated and embraced by the gymnastics community at Karolyi Ranch (Herein after, "THE RANCH"). There at and there in NASSAR perpetrated his sexual abuse of numerous minor children all known by COLAROSSI, MICHIGAN STATE UNIVERSITY, and USA GYMNASTICS. Each had knowledge of NASSAR's sexually abusive propensities and the abuse perpetrated by NASSAR against minor children.

10.   Despite having this knowledge, Defendant COLAROSSI concealed, ignored, and willfully blinded himself to these facts, to the detriment of the affiliated members of USA GYMNASTICS, in the present action AOGC Plaintiffs, causing AOGC Plaintiffs to suffer damages when the sexual abuse allegations garnered widespread public attention.

### DEFENDANT, USA GYMNASTICS

11.     Defendant USA GYMNASTICS (or "USAG") at all times mentioned herein was and is a business entity of form unknown, having its principal place of business in the State of Indiana. Plaintiffs are informed and believe USA GYMNASTICS was incorporated in the State of Texas and/or Arizona. Defendant USA GYMNASTICS is the national governing body for gymnastics in the United States. Defendant USA GYMNASTICS was the primary entity owning, operating, and controlling the activities and behavior of its employee, agents, including but not limited to NASSAR.

12.     Defendant USA GYMNASTICS conducts business activities in the State of California, with regional affiliates in Northern, Central, and Southern California. Defendant USA GYMNASTICS currently sponsors and has scheduled over 75 competitions, meets, and/or invitational's throughout the entire state of California. Defendant USA GYMNASTICS has numerous athletes and professional members, professional, instructor and club members including AOGC Plaintiffs, conducting substantial activity and collecting substantial amounts of dues and membership fees, purposefully availing itself of the laws and protections of California.

13.     Defendant USA GYMNASTICS is the national governing body for gymnastics in the United States, and selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States. Defendant USA GYMNASTICS has more than 174,000 athletes and professional members, more than 148,000 athletes registered in competitive programs, as well as more than 25,000 professional, instructor and club members. Approximately 4,000 competitions and events throughout the United States are sanctioned annually by Defendant USA GYMNASTICS. Defendant USA GYMNASTICS was the primary entity owning, operating and controlling the activities and behavior of its employee agents, including, but not limited to NASSAR. USAGYMNASTICS is also the entity that selects gymnasts for the US National and Olympic Teams.

14.     Defendant USA GYMNASTICS purposely conducts substantial educational business activities in the State of California, with regional affiliates in Northern California, Central California, and Southern California. Defendant USA GYMNASTICS currently sponsors

1   and has scheduled over 75 competitions, meets, and/or invitationals throughout the entire state of
2   California. Defendant USA GYMNASTICS has numerous athletes and professional members,
3   professional, instructor and club members conducting substantial activity and purposefully
4   availing itself of the laws and protections of California. The sexual abuse, harassment, and
5   molestation alleged herein took place multiple times, where Defendant USA GYMNASTICS as
6   the primary entity owning, operating and controlling the activities and behavior of its employee
7   agents, including, but not limited to the Perpetrator NASSAR.

8          15.    As stated on its website through its Code of Ethical Conduct, "...Members of
9   [Defendant USA GYMNASTICS] are expected to promote a safe environment for participants,
10  coaches, officials, volunteers and staff in all gymnastics disciplines, which includes an
11  environment free from sexual misconduct. It is inconsistent with this obligation for any Member
12  to: 1. Solicit or engage in sexual relations with any minor. 2. Engage in any behavior that utilizes
13  the influence of a professional Member's position as coach, judge, official or administrator to
14  encourage sexual relations with an athlete or participant. 3. Engage in sexual harassment by
15  making unwelcome advances, requests for sexual favors or other verbal or physical conduct of a
16  sexual nature where such conduct creates an intimidating, hostile or offensive environment."
17  However, Defendant USA GYMNASTICS' policies and procedures then provide that,
18  "Professional Members of  USA GYMNASTICS must protect the integrity of the sport and the
19  interests of the athletes they serve by avoiding sexual relationships with athletes **except where**
20  **the capacity and quality of the athlete's consent to enter that relationship is beyond**
21  **question."** [Emphasis Added], in enforcing this Code of Ethical Conduct, the published policies
22  and procedures provide, "Compliance with this Code depends primarily upon understanding and
23  voluntary compliance, secondarily upon reinforcement by peers, and, when necessary, upon
24  enforcement through disciplinary action....Any Member who believes that another Member of
25  USA GYMNASTICS has failed to meet such Member's obligations under this Code is, under all
26  but the most egregious circumstances, encouraged to first address that concern directly to that
27  Member."

28

16.     Under USA GYMNASTICS's policies and procedures for reporting abuse, it provides that, USA GYMNASTICS will follow applicable law in reporting abusive situations to the proper authorities. If, in Defendant USA GYMNASTICS's reasonable and good faith judgment, reporting to the proper authorities is necessary to protect a person from the possibility of further abuse, it may make such report even if not compelled by law to do so." Further, the policies and procedures for "Reporting Suspected Abuse" at Defendant USA GYMNASTICS provide that "[a]ny person who reasonably and in good faith believes a member of GYMNASTICS has abused another person, whether physical or sexual, such person may notify the Defendant USA GYMNASTICS National Office pursuant to Articles 9 and/or 10 of the Defendant USA GYMNASTICS Bylaws."

17.     Under the applicable laws. Defendant USA GYMNASTICS is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that Defendant USA GYMNASTICS is a youth recreational program and Defendant USA GYMNASTICS' employees' duties require direct contact and supervision of minor children.

18.     Defendant USA GYMNASTICS receives millions of dollars in private donations and corporate financial support, on a yearly basis, according to its publicly available Form-990's. It is on this basis, under information and therefore belief, that Defendant USA GYMNASTICS ignored and/or deceived, and/or concealed the abuse that was being perpetrated by NASSAR, and other employees/agents of its organization, such that Defendant USA GYMNASTICS would not be subjected to public scrutiny, administrative, civil and/or criminal investigation and could maintain a false facade of high moral repute, and could maintain and grow this financial support for its programs. This attempt to conceal and/or ignore the abuse being perpetrated under its control and supervision and was done at the expense of minor athletes, the coaches, gyms, trainers, parents, and other participants, all of this was done without the knowledge, consent, or permission of the Plaintiffs AOGC Plaintiffs.  This scheme of concealment led AOGC Plaintiffs to believe that their contractual relationship and public affiliation with Defendant USA GYMNASTICS would provide for a beneficial economic relationship as well as promote and advance the athletic careers and endeavors of AOGC Plaintiffs' customers.

19.     As NASSAR was prosecuted and pled, and convicted thereupon of a felony for the conducted alleged herein, the Plaintiff requests attorneys' fees against NASSAR, MSU, the USOC, and USA GYMNASTICS pursuant to Code of Civil Procedure § 1021.4 and Tort of Another Doctrine

## DEFENDANT, MICHIGAN STATE UNIVERSITY

20.     Defendant MICHIGAN STATE UNIVERSITY, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Michigan. Plaintiff is informed and believes MICHIGAN STATE UNIVERSITY is a public land grant university, established in 1855, in East Lansing, Michigan.  Southern California area, to attend schooling at MICHIGAN STATE UNIVERSITY. The Defendant MICHIGAN STATE UNIVERSITY further conducts business in the State of California by sending representatives to college fairs and recruitment events to lure potential students to attend Defendant MICHIGAN STATE UNIVERSITY. Furthermore, MICHIGAN STATE UNIVERSITY employed NASSAR and compensated NASSAR to provide medical treatment throughout the United States with USA GYMNASTICS, and even throughout the world. Defendant MICHIGAN STATE UNIVERSITY knowingly permitted NASSAR to travel the world performing his abusive procedures on minor gymnasts with USA GYMNASTICS, including Jane LM Doe. Despite having numerous warning signs that NASSAR was sexually abusive towards minors and young women, MICHIGAN STATE UNIVERSITY continued to employ NASSAR and continued to allow NASSAR to be associated with USA GYMNASTICS. MICHIGAN STATE UNIVERSITY knew that NASSAR travelled throughout the United States, and employed him to do so. It was under these circumstances that NASSAR was given solitary and secluded access to minors, including the Plaintiff Jane LM Doe, where NASSAR sexually violated the Plaintiff.

21.     Defendant MICHIGAN STATE UNIVERSITY purposely conducts substantial business activities in the State of California. Defendant MICHIGAN STATE UNIVERSITY actively seeks and recruits minor athletes from California, specifically the Los Angeles and

22.     MICHIGAN STATE UNIVERSITY's association with USA GYMNASTICS placed AOGC Plaintiffs' customer athletes in the custody, care and control of NASSAR at Karolyi Ranch (hereafter "THE RANCH")  and at other points in time such as at elite level completions, and the Olympics.  It is with this that AOGC Plaintiffs are informed and believe, and with that allege that MICHIGAN STATE UNIVERSITY failed to prevent the harm caused by NASSAR to AOGC Plaintiffs' athletes leading to overwhelming negative publicity for AOGC and its owners/operators ARTUR AKOPYAN and GALINA MARINOVA.  Its was because of this nationally disseminated negative publicity that AOGC Plaintiff's business suffered extreme financial hardship, including by not limited to the financial collapse of its business operations, irreparable damage to its reputation as a world class gymnastics training center capable of producing elite level gymnasts, and the emotional, financial, and reputational ruin of its owners/operators ARTUR AKOPYAN and GALINA MARINOVA.

23.     Under the applicable laws, Defendant MICHIGAN STATE UNIVERSITY and its Sports Medicine Department and athletics departments, are organizations whose employees, agents, and/or servants are legally "mandated reporters", considering that Defendant MICHIGAN STATE UNIVERSITY operates a medical facility, and its employees' duties require providing direct medical care. Furthermore, Defendant MICHIGAN STATE UNIVERSITY is governed by 17 Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq.,* and is required to investigate allegations of sexual assault, sexual abuse and sexual harassment.  Defendant MICHIGAN STATE UNIVERSITY systematically failed to uphold the duties and requirements under Title IX through a pattern, history and culture of willful disregard for 21 allegations of sexual abuse. Because MICHIGAN STATE UNIVERSITY is a public university organized and  existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. §600.6431. Plaintiffs lodged for filling Notices of Intent to File Claim with the Michigan Court of Claims by mail on October 24, 2018.

**DOE DEFENDANTS, 1- 500**

24.     Defendants DOES 1 through 500, inclusive, and each of them, are sued herein under said fictitious names. Plaintiff is ignorant as to the true names and capacities of DOES 1 through 500, whether individual, corporate, associate, or otherwise, and therefore sue said Defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will request leave of Court to amend this Complaint to state their true names and capacities herein.

25.     Plaintiff is informed and believes, and based thereon alleges, that "Defendants," and each of them, were and are the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining "Defendants," and each of them are, and at all times herein mentioned were, acting within the course and scope of that agency, partnership, employment, conspiracy, ownership or joint venture. Plaintiff is further informed and believes, and based thereon alleges, that the acts and conduct herein alleged of each such Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

26.     Plaintiffs are informed and believe, and on that basis allege that at all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by all said Defendants.

27.     A corporation is a "person" within meaning of Civil Code § 51.9, which subjects persons to liability for sexual harassment within a business, service or professional relationship, and such an entity defendant may be held liable under this statute for the acts of its employees. C.R v. Tenet Healthcare Corp., 169 Cal.App.4th 1094 (2009). Further, principles of ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

### JURISDICTIONAL STATEMENT AND CHOICE OF LAW

28.     The damages to Plaintiffs occurred in California. Each of the Defendants themselves or by and through their direct affiliations with the entities as individuals, employees, trustees, board members, directors, share-holders or the like reached with sufficient contacts the state of California, sufficient to avail itself of the laws and protections of the state.

1

2      **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

3                    **(CAL. CIVIL CODE § 3300)**

4            **(By Plaintiffs against USAG, and Does 1 - 500)**

5          29.      AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 28 as

6    though fully set forth herein here at and by this reference made a part hereof.

7          30.      Defendant USAG, by and through its acts, omissions, and by the terms of its own

8    policies, code of ethics, terms, and  its duty to report and ensure member safety, and a multitude

9    of other documented requirements of its agents, employees, and assigns failed to perform its

10   duties and or promises under the membership agreements with ALL OLYMPIC GYNNASTICS

11   CENTER and ARTUR AKOPYAN and GALINA MIRANOVA. The membership agreements

12   were between AOGC itself, GALINA MIRANOVA and ARTUR AKOPYAN individually as

13   well. Each  agreement was one of adhesion as they required strict adherence to all of its

14   requirements and payment of a yearly $225.00 fee. Each year a new membership agreement and

15   fee was required, and each year AOGC Plaintiffs paid for their memberships as coaches and for

16   their gym, All Olympic Gymnastics Center.

17         31.      USAG membership agreements, while presumably voluntary, would bar anyone

18   having not properly applied for and paid for membership from participation in any USAG

19   sanctioned events including those on the grandest stage, the Olympics and international

20   competition. Any all gymnasts, gyms, and their coaches were required to be members. No

21   Olympic gymnast in the United States that wanted to compete in the Olympics or international

22   completion could do so without being a member of USAG and thereby, agreeing to all of its

23   membership rules and regulations, as well as its duties and responsibilities promulgated in the

24   membership terms and documents . Deviation from those rules and regulations could result in a

25   lifetime sanction and thereby prevention of participation in any USAG sanctioned events or

26   meets, including the Olympics, and or association with any gymnastics of any kind.

27         32.      It was by and through these membership adhesion agreements that USAG and

28   AOGC Plaintiffs formed their contractual relation, each with the same mutual goals; financial

1   success of the business, bolstering of their reputations, ensuring of their continued livelihood,

2   and the enduring success of their athletes at the highest levels of competition.  However, by and

3   through their employment of and their extensive involvement with NASSAR, USAG,

4   continuously and knowingly exposed and subjected at least one of AOGC Plaintiffs' athletes to

5   extensive sexual abuse as well as other members to NASSAR related abuses potentially

6   beginning as early as 1986 and then proceeded to systematically cover up the abuses.

7          33.    As is set forth herein. Defendants and each of them have failed to uphold

8   numerous mandatory duties required of them by state and federal law, as well as their own

9   internal written policies and procedures, including:  Duty to use reasonable care to protect

10  participants and members from known or foreseeable dangers, Duty to enact policies and

11  procedures that are not in contravention of the Federal, Civil Rights Act, section 1983 and the

12  14th amendment of the United States, Constitution; Duty to protect participants and members

13  and staff, and provide adequate supervision; Duty to ensure that any direction given to

14  participants and members is lawful, and that adults act fairly, responsibly and respectfully

15  towards participants and members; Duty to properly train staff so that they are aware of their

16  individual responsibility for creating and maintaining a safe environment; Duty to review the

17  criminal history of applicants and current employees; Duty to provide diligent supervision over

18  minors; Duty to act promptly and diligently and not ignore or minimize problems. Duty to report

19  suspected incidents of child abuse and more specifically childhood sexual abuse;

20         34.    AOGC Plaintiffs fully performed all of their obligations under the membership

21  agreement and at no point in time breached or were in breach of their obligations. AOGC

22  Plaintiffs have never been charged with any wrongdoing and there is substantial evidence

23         35.    While the total amount of damages that were realized  from all of the membership

24  payments, dues, fees, costs and expenses have not been fully tallied, when combined with the

25  incidental and consequential damages reasonably flowing from the breaches of the agreement(s),

26  AOGC Plaintiffs were damaged in amount that taken on its own or when combined with the

27  other causes of action herein is, according to proof, in excess of the $25,00.01 jurisdictional

28  requirement.

1

2 **SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**

3 **(By Plaintiffs against USAG, THE USOC, NASSAR, and MSU, and Each of Them and**

4 **Does 1 - 500)**

5       36.     AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 35 as

6 though fully set forth herein here at and by this reference made a part hereof.

7       37.     By and through the formation of the contract, NASSAR was hired in some

8 capacity to treat the young under-age female athletes for USAG as early as 1986.  As a member

9 and participant of Defendants USA GYMNASTICS, AOGC Plaintiffs were given no choice but

10 to put their trust in  NASSAR, the team physician, when he was treating AOGC's gymnasts. Per

11 policy AOGC Plaintiffs were not permitted in the same room or area where the "treatments"

12 (sexual abuses) were perpetrated.

13       38.     Jane LM Doe and other victims were in direct contact with NASSAR,  and at the

14 time were under NASSAR's direct supervision, control and care, which created a special,

15 confidential, and fiduciary relationship between Jane LM Doe and NASSAR. Because of such

16 relationship, NASSAR owed a duty of care to Jane LM Doe as well as her parents and coaches.

17 Additionally, as the employers and supervisors of NASSAR, with knowledge that he was in

18 contact with and providing care to children including AOGC's gymnasts, Defendants USA

19 GYMNASTICS, THE USOC, and MSU were also in a special, confidential, and fiduciary

20 relationship with Jane LM Doe and her parents and coaches to uphold the duty of care implied

21 by law and contract.

22       39.     USAG and AOGC Plaintiffs agreed that in exchange for the membership dues,

23 fees, and costs paid by AOGC Plaintiffs; to act in and for the benefit of the gymnasts, the

24 coaches and the ALL OLYMPIC GYMNASTICS CENTER as an entity.

25       40.     There is no question that NASSAR, MSU, USAG and The USOC engaged in a

26 contractual relationship for decades, whereby NASSAR would be the United States Olympic

27 Women's' Gymnastics team doctor for and in exchange for valuable consideration which would

28 not only benefit each financially but also benefit the reputation of each.  There is also no doubt

1   that USAG, MSU and The USOC by and through its acts, omissions, violated its own internal

2   policies, contractual relations and the law, when it permitted and failed to report and prevent the

3   sexual abuses of NASSAR, and therein so doing failed to uphold and breached their

4   contractually established fiduciary duty to act for the benefit of AOGC Plaintiffs and their

5   athletes, who were the very backbone of USAG gymnastics and the United States Olympic

6   Team.

7       41.    USAG and its principal, The USOC by and through its oversight and control of

8   USAG, had a fiduciary responsibility, established by the requirements of the membership

9   agreements, code of ethics, internal policies, other extensive documentation, and the law, in

10  which they agreed to act for the benefit of AOGC Plaintiffs and their athletes. What's more is

11  that the athletes, when they were not under the care and control AOGC Plaintiffs, were under the

12  care and control of USAG and its principals, employees, agents and assigns, which for decades

13  included NASSAR.

14      42.    USAG and the USOC knowingly exposed AOGC's gymnasts and AOGC's

15  Plaintiffs, as their coaches and their business, good will, and reputation to NASSAR's abuses,

16  and then proceed to ignore, fail and refuse to investigate or prevent further abuse in the face of

17  overwhelming evidence of numerous complaints of the instances of sexual abuse. Because of

18  the contractual relationship NASSAR had with USAG and thereby the USOC, each owed, and

19  did breach their fiduciary duties for failing to prevent and report the ongoing abuses and the

20  systematic cover up. Failing to prevent and or report known and reported sexual abuse fell below

21  the duties owed by law and contract of USAG and The USOC had with the members like AOGC

22  it was tasked to protect.

23      43.    MSU also owed a duty to those it could reasonably foresee would be damaged by

24  their breach of their duty to warn, prevent and report instances of sexual abuse to investigate

25  such instances on reporting of them rather then systematically covering them up. MSU could

26  reasonably foresee that their failure to prevent NASSAR from having further contact with USAG

27  under-age female gymnasts, would damage the gymnasts and their families coaches and the

28  facilities where they trained.

44.   MSU's legal duty to report also gives rise to the fiduciary relationship. Legally MSU, once it received reports of NASSAR and his abuses had a duty to report to prevent further abuse and damages. MSU breached the duty when it systematically failed to report the abuses. MSU's duty was of the utmost kind as it was aware that NASSAR was dealing intimately with underage children.

45.   Worse still is that MSU knew of the alleged abuses as far back a the early 1980s and allowed and signed off on NASSAR as being safe rather than a sexual predator. When USAG discovered the abuses back in the late 1990s as was alleged in separate proceedings, indicate that both USAG and MSU knew of and yet still were willing to allow NASSAR to continue contact with these children. As a duty was owed to the children, the same duty extends to their parents and coaches whose damages as a result of the sexual abuse are reasonable and foreseeable.

46.   USAG knew at the time they contracted with AOGC Plaintiffs that they had agreed to ensure a safe and healthy environment, free of physical and sexual abuses perpetrated by its agents and employees, such as NASSAR upon the children he was tasked with providing care for. A reasonably foreseeable breach of this duty is financial harm, loss of good will and reputation and distress to the coaches and their business who trained and were otherwise responsible for the health and wellbeing of these girls when they were not in the control and care of USAG, NASSAR and or MSU.

47.   "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." (Cleveland v. Johnson, 209 Cal.App.4th 1315, 1338 (2012), [147 Cal.Rptr.3d 772]. MSU, USAG and the USOC knew at the time of contracting that they were in business to act for the benefit of their own reputation and good will as much if not more so to act for and on behalf of the reputation and good will of AOGC Plaintiffs and their athletes.

48.   MSU, USAG and The USOC all failed to uphold and breached their fiduciary duty on numerous occasions by ignoring, and or actively concealing the truth of NASSAR and

the reports that he was sexually abusing young and underage women. Each defendant, including NASSAR, was in breach of the very fabric and framework that make up their contracts with one another, and the promises and pledges required of those members in their contracts with USAG. Thus while not in direct privity, each party, at the time of contracting knew of and agreed to the fiduciary duty to act for the benefit of one or more than one other.

49.     AOGC Plaintiffs suffered damages actual and general in amounts according to proof, but which was in excess of $25,000.01 when asserted by itself or with the other causes of action alleged herein.

50.     According the statutes for Fraud, Deceit, and Intentional Misrepresentation, if proven, AOGC Plaintiffs would be entitled to punitive and or exemplary damages. Cal. Code. Civ. Proc § 3294 permits punitive and exemplary damages when Plaintiff can prove fraud, malice, or oppression. As here, Defendants are clearly liable for fraud, deceit and concealment, and should therefore be subject to punitive and exemplary damages in amount to be determined at trial. Cal. Code. Civ. Proc. § 3294 states: (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." And there is no question each Defendant has satisfied both section a and section b and this is liable for punitive / exemplary damages.

**THIRD CAUSE OF ACTION FOR FRAUD, DECEIT, CONCEALMENT, DECEPTIVE PRACTICES**

**(CIVIL CODE § 1572, CIVIL CODE 1709-1710, CIVIL CODE 3294)**

**(By Plaintiffs against All Defendants and Each of Them, and Does 1 - 500)**

51.     AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 50 and 72 through 86 as though fully set forth herein here at and by this reference made a part hereof.

52.     It is undisputed that NASSAR on numerous occasions made knowingly false representations, promises and assurances to no less than 300 underage children who he sexually abused. These representations and promises included but are not limited to representations of necessary treatments and procedures he would need to perform on these underage children in the course and scope their treatment as elite gymnast with USAG.  These athletes, their parents and coaches had no reason not trust and rely on the representations and assurances of NASSAR. The reasonable reliance and the rules of USAG and The USOC allowed for NASSAR to cause damages and remain undetected by the parents and coaches until finally, after decades deceit NASSAR was outed, arrested, prosecuted, and sentenced to life in prison where he belongs.

53.     By and through their placing their faith in NASSAR, along with the fiduciary relationship that existed, makes the damages here all the more egregious. But it also makes the reliance by AOGC Plaintiffs on the representants and assertions their athletes were safe and being properly treated, reasonable.

54.     This reliance caused damages to AOGC Plaintiff's reputation, good will, and caused them damages both actual and general.

55.     MSU, USAG, The USOC are also each liable for the promises, assurances, and representations that were made which caused reasonable reliance damages to AOGC Plaintiffs.

56.     MSU, its agents, staff, faculty, employees or the like, from as early as 1986 had and knew of the sexual abuses that were being carried out by NASSAR, who was an employee and doctor in the MSU sports medicine department.  MSU, rather than investigate the reports, and suspend until which time as the reports were veted, NASSAR for the safety and liability purposes. That never occurred. Instead MSU and its staff, engaged in a systematic cover up of the reports of abuses to preserve their own public image and reputation, so they could retain students, faculty, staff, donors, clients, boosters, participants, members, and or the like, and

1   students, faculty, staff, donors, clients, boosters, participants, members, and or the like, thus

2   allowing donations and other financial support to continue flowing into their coffers for financial

3   gain, and also to avoid liability and damages to their reputations and the consequences finically

4   associated therewith.

5       57.    All the while MSU and its staff actively concealed, deceived, and intentionally

6   misrepresented that they were a top ranked institution and that they were a safe and secure

7   environment within which one could have faith that their children would not be victimized. MSU

8   further concealed the information of NASSAR's abuses from the public, which included AOGC

9   Plaintiff and Jane LM Doe.

10      58.    Additionally, AOGC Plaintiffs, by and through their affiliation with USAG were

11  unknowingly forced into association with NASSAR, who was the team doctor of MSU and USA

12  Gymnastic teams. Had they known of the abuses rather than be deceived and told all was safe

13  and proper, damages to AOGC Plaintiffs and their gymnasts could have been prevented or

14  avoided all together. These deceptive practices were done so as to preserve their own public

15  image and reputation, so they could retain students, faculty, staff, donors, clients, boosters,

16  participants, members, and or the like, and acquire new students, faculty, staff, donors, clients,

17  boosters, participants, members, and or the like, thus allowing donations and other financial

18  support to continue flowing into their coffers for financial gain, and also to avoid liability and

19  damages to their reputations and the consequences finically associated therewith

20      59.    MSU, USAG, and The USOC each on numerous occasions represented, promised

21  and assured AOGC Plaintiffs and other parents and coaches that NASSAR was safe, and

22  qualified to medically treat their young child athletes, while also knowing and having reason to

23  know that NASSAR was a sexual predator, who should not have had contact with anyone for any

24  reason. Plaintiff is informed and believes, and on that basis alleges, that Defendants knew

25  or should have known that NASSAR had engaged in unlawful sexually-related

26  conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to

27  disclose these facts to AOGC Plaintiffs, their athletes or their athletes parents and others, but

28  negligently and/or intentionally suppressed, concealed or failed to disclose this information. The

1  duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship
2  between Defendants and Plaintiff.

3      60.    AOGC Plaintiff's reliance on the promises and assurances was reasonable based
4  on their having no reason to know of the sexual abuses of NASSAR. MSU, USAG and The
5  USOC despite their knowledge of the abuses, systematically, concealed, omitted, deceived and
6  misstated that NASSAR was no threat, thereby allowing him to continue abusing.

7      61.    Had AOGC Plaintiffs known of even the slightest allegation, they could have
8  prevented their athletes from abuses, first and foremost. Second, and the source of AOGC
9  Plaintiffs' damages herein, was that had AOGC Plaintiffs known of the abuses, they could have
10  protected their own reputations and business by disassociating with NASSAR, MSU, and more
11  importantly terminating the contract with USAG and The USOC. However, AOGC Plaintiffs
12  were never told, or were told falsehoods and lies in order that MSU, USAG, and The so as to
13  preserve their own public image and reputation, so they could retain students, faculty, staff,
14  donors, clients, boosters, participants, members, and or the like, and acquire new students,
15  faculty, staff, donors, clients, boosters, participants, members, and or the like, thus allowing
16  donations and other financial support to continue flowing into their coffers for financial gain, and
17  also to avoid liability and damages to their reputations and the consequences finically associated
18  therewith. The failures to disclose in order to protect their own reputations and financial
19  wellbeing were done at the expense of those like AOGC Plaintiffs who were the very backbone
20  of USAG and The US Olympic Team, and who had dedicated their entire lives only to see it
21  stolen away by one mans need for his own sexual gratification.

22      62.    AOGC Plaintiffs reasonable reliance based on their relationship with Defendants
23  caused them extensive damages to their reputations and good will to the point that they may
24  never recover to the point they were before the abuses and conspiracies began to unravel. The
25  damages, according to proof, are far in excess of the $25,000.01 requirement for unlimited
26  jurisdiction.

27      63.    According the statutes for Fraud, Deceit, and Intentional Misrepresentation, if
28  proven, AOGC Plaintiffs would be entitled to punitive and or exemplary damages. Cal. Code.

Civ. Proc § 3294 permits punitive and exemplary damages when Plaintiff can prove fraud, malice, or oppression. As here, Defendants are clearly liable for fraud, deceit and concealment, and should therefore be subject to punitive and exemplary damages in amount to be determined at trial. Cal. Code. Civ. Proc. § 3294 states: (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." And there is no question each Defendant has satisfied both section a and section b and this is liable for punitive / exemplary damages.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE
### (By Plaintiffs against All Defendants and Each of Them, and Does 1 - 500)

64.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 63 as though fully set forth herein here at and by this reference made a part hereof.

65.    MSU, USAG, and The USOC each owed a duty of care to AOGC Plaintiffs to properly report, investigate, prevent, and act, with regards to reports of sexual abuse in gymnastics, especially when it is alleged that one of their own employees, agents or assigns is potentially responsible for the abuses.  The duty to report and disclose, so as to prevent further sexual abuse for each MSU, USAG, and The USOC were born out the law, the contractual relationships, the internal policies and the terms and conditions of each.  Defendants had a duty

1   to disclose facts to AOGC Plaintiffs, their athletes or their athletes' parents and others of

2   NASSAR related sexual abuse reports, but negligently and/or intentionally suppressed,

3   concealed or failed to disclose this information. The duty to disclose this information arose by

4   the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.

5       66.     Because of the relationship between Plaintiff and Defendants, Defendants had an

6   obligation and duty under the law not to hide material facts and information about NASSAR's

7   past, and his deviant sexual behavior and propensities. Additionally, Defendants had

8   an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard

9   minors who were reasonably likely to come in contact with NASSAR.

10      67.     Each Defendant MSU, USAG and The USOC breached their duties on one or

11  more occasions when they failed and refused to follow the law in place requiring reporting of

12  sexual abuse of a minor and instead choose to cover up the crimes which is crime in and of itself.

13      68.     Defendants and each of them were a substantial factor in the damages to AOGC

14  Plaintiffs. Each bearing some or all of the responsibility, in that, each had the same duty, each

15  had the same or similar knowledge of the sexual abuses, and each failed, refused and or

16  systematically covered up the abuses in an effort  so as to preserve their own public image and

17  reputation, so they could retain students, faculty, staff, donors, clients, boosters, participants,

18  members, and or the like, and acquire new students, faculty, staff, donors, clients, boosters,

19  participants, members, and or the like, thus allowing donations and other financial support to

20  continue flowing into their coffers for financial gain, and also to avoid liability and damages to

21  their reputations and the consequences finically associated therewith.

22      69.     Each Defendant also owed a duty in hiring, supervising, training, educating,

23  NASSAR. There is no doubt that each failed to properly vet, supervise, train, and or educate

24  NASSAR which did result in the direct physical damages he caused to the underage females he

25  sexual abused and the reputations and good will of MSU, USAG, The USOC, and AOGC

26  Plaintiffs.

27      70.     Defendants and each of them acted to protect themselves, all the while sacrificing

28  the reputations and physical and emotional well being of the children and their parents and

1  coaches, such as AOGC Plaintiffs. Damages resulted; physical, emotion, and financial, and all of
2  said were foreseeable.

3       71.    Defendants were each the substantial factor for their own breaches and the actual
4  were proximate causes for each of the breaches as well as proximately and foreseeably
5  responsible for the breaches of all of the other Defendants jointly and severally. Any of the
6  Defendants had the opportunity to prevent these harms to AOGC Plaintiffs in equal degrees. Yet,
7  each Defendant failed in full to report, investigate or attempt to prevent the abuses and damages,
8  and thus are each liable to AOGC Plaintiffs for the damages suffered emotionally and financially
9  to their person and reputations, good will and business now and in the future.

10  **FIFTH CAUSE OF ACTION**

11  **UNFAIR COMPETITON**

12  **(BUSINESS & PROFESSIONS CODE § 17200)**

13  **(By Plaintiffs against USAG, The USOC, and MSU and Each of Them and Does 1 - 500)**
14       72.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 71 as
15  though fully set forth herein here at and by this reference made a part hereof.

16       73.    Plaintiff is informed and believes and, on that basis, alleges that USAG, The
17  USOC, and MSU have engaged in unlawful, unfair and deceptive business practices including
18  allowing NASSAR to engage in repeated harassment of participants and members, including
19  AOGC Plaintiff's gymnasts and failing to take all reasonable steps to prevent harassment and
20  abuse from occurring, and failing to notify AOGC Plaintiffs and others that the harassment was
21  occurring. The unlawful, unfair and deceptive business practices also included failing to
22  adequately investigate, vet, and evaluate individuals for employment with Defendants MSU,
23  USAG, and The USOC, refusing to design, implement, and oversee policies regarding sexual
24  harassment and abuse of children in a reasonable manner that is customary in similar educational
25  environments.

26       74.    Plaintiff is informed and believes and, on that basis, alleges that USAG, The
27  USOC, and MSU have engaged in unlawful, unfair and deceptive business practices including
28  allowing concealing sexual harassment, abuse and/or molestation claims by participants and

members, such as AOGC Plaintiff's gymnast, to preserve their own public image and reputation, so they could retain students, faculty, staff, donors, clients, boosters, participants, members, and or the like, and acquire new students, faculty, staff, donors, clients, boosters, participants, members, and or the like, thus allowing donations and other financial support to continue flowing into their coffers for financial gain, and also to avoid liability and damages to their reputations and the consequences finically associated therewith. And all the while, deny AOGC Plaintiffs and similarly situated parties the right to knowledge or rights to remove themselves and their gymnasts, and their reputation, good will. and finances of their own business.

75.    AOGC Plaintiffs are and believes and, on that basis, alleges that USAG, The USOC, and MSU have engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers like NASSAR, who were employees, agents, members, and/or participants at THE RANCH, run and controlled by USAG, and The USOC so USAG, The USOC and MSU, could maintain their public image, and avoid detection of such abuse and abusers.

76.    AOGC Plaintiffs are informed and believes and thereon alleges that Defendants MSU, USAG, and The USOC actively concealed these allegations, such that Defendants would be insulated from public scrutiny, governmental oversight, and/or investigation from various law enforcement agencies, all done in order to maintain the false sense of safety for participants and their families and to perpetuate the program financially.

77.    AOGC Plaintiff is informed and believes and thereon alleges that Defendants MSU, USAG, and The USOC benefitted financially to the detriment of its competitors, who had to comply with the law.

78.    AOGC Plaintiff seeks restitution for all amounts improperly obtained by MSU, USAG, and The USOC through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of AOGC Plaintiffs and all other similarly situated participants and members who were damaged.

79.    AOGC Plaintiff is entitled to recover reasonable attorneys' fees pursuant to the California Business and Professions Code and section 1021.5 of the California Code of Civil

1    Procedure, and the Tort of Another Doctrine as well.

2        80.    AOGC Plaintiffs were damages in an amount in excess of $25,000.01 by this

3    cause of action and or when taken with the other causes of action herein alleged.

4    //

5    //

6                            **SIXTH CAUSE OF ACTION**

7                             **CONSTRUCTIVE FRAUD**

8                             **(CIVIL CODE § 1573);**

9    **(By Plaintiffs against USAG, The USOC, and MSU and Each of Them and Does 1 - 500)**

10       81.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 80 as
     though fully set forth herein here at and by this reference made a part hereof.

11

12       82.    California Civil Code § 1573 (2016) states: 1573 Constructive Fraud  -

13       1. In any breach of duty which, without an actually fraudulent intent, gains an
14       advantage to the person in fault, or any one claiming under him, by misleading another to
15       his prejudice, or to the prejudice of any one claiming under him; or,

16

17       2. In any such act or omission as the law specially declares to be fraudulent,
     without respect to actual fraud.

18

19       83.    AOGC Plaintiffs are informed and believes and, on that basis, alleges that USAG,
20   The USOC, and MSU have engaged in unlawful, unfair and deceptive business practices
21   including allowing concealing sexual harassment, abuse and/or molestation claims by
22   participants and members, such as AOGC Plaintiff's gymnast, to preserve their own public
     image and reputation, so as to preserve their own public image and reputation, so they could
23   retain students, faculty, staff, donors, clients, boosters, participants, members, and or the like,
24   and acquire new students, faculty, staff, donors, clients, boosters, participants, members, and or
25   the like, thus allowing donations and other financial support to continue flowing into their
26   coffers for financial gain, and also to avoid liability and damages to their reputations and the
27   consequences finically associated therewith.

28

---

84.     All the while, MSU, USAG, and The USOC by and through their acts and omissions did deny AOGC Plaintiffs and similarly situated parties the right to knowledge or rights to remove themselves and their gymnasts, and their reputation, good will and finances of their own business or the avoid liability and damages to their reputations and the consequences finically associated therewith. They further denied AOGC Plaintiffs the ability to preserve, retain and or generate new students, faculty, staff, donors, clients, boosters, participants, members, and or the like, thus preventing them the ability to collect revenue, donations and other financial support to continue flowing into their coffers for financial gain.

85.     AOGC Plaintiffs were misled by MSU, USAG, and The USOC to their prejudice causing the loss and failure of their business, reputation, and good will. These damages when taken by themselves or combined with the other causes of action herein total in excess of $25,000.01.

86.     According the statutes for Fraud, Deceit, and Intentional Misrepresentation, if proven, AOGC Plaintiffs would be entitled to punitive and or exemplary damages. Cal. Code. Civ. Proc § 3294 permits punitive and exemplary damages when Plaintiff can prove fraud, malice, or oppression. As here, Defendants are clearly liable for fraud, deceit and concealment, and should therefore be subject to punitive and exemplary damages in amount to be determined at trial. Cal. Code. Civ. Proc. § 3294 states: (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." And

1    there is no question each Defendant has satisfied both section a and section b and this is liable for

2    punitive / exemplary damages.

3

4                              SEVENTH CAUSE OF ACTION

5    NEGLIGENT INTERFERENCE WITH PERSPECTICE ECONOMIC ADVANTAGE

6    (By Plaintiffs against NASSAR, USAG, The USOC, and MSU and Each of Them and Does

7                                      1 - 500)

8          87.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 86,

9    excluding punitive damage paragraphs, as though fully set forth herein here at and by this

10   reference made a part hereof.

11         88.    MSU, USAG, and The USOC each interfered in the relationship between AOGC

12   Plaintiffs and at least two of AOGC Plaintiff's underage gymnast who were training to be and

13   already were, among the best in the world, one of whom was an Olympic Gold Medalist.

14
15         89.    AOGC Plaintiffs and Jane LM Doe and at least one other gymnast were elite

16   level, and trained at AOGC in Southern California. Having an Olympic Gold Medalist being

17   trained by AOGC Plaintiffs was of huge economic value to AOGC Plaintiffs, and as a result

18   Plaintiffs did make and stood to make even more financial success from the relationship with

     Jane LM Doe and at least one other gymnast.
19

20         90.    However, as a result of the sexual assaults by NASSAR which were known to

21   occur and never reported or prevented by MSU, USAG, and The USOC, the relationship with

22   those gymnasts was severed when Jane LM Doe filed suit against AOGC Plaintiffs, MSU,

23   USAG et al in Federal Case 8:18-cv-1117-JLS-KES.  MSU, USAG, and The USOC breached

24   their duty to AOGC Plaintiffs to act with reasonable care as established above. Each knew of the

25   relationship AOGC Plaintiffs had with their gymnasts and each engaged in wrongful conduct as

26   described in the causes of action above, which did disrupt, and destroy completely, the trust and

27   financial symbiosis, causing AOGC Plaintiffs irreparable damages in excess of $25,000.01

28

91.   MSU, USAG, and The USOC were each a substantial factor in causing the harms to AOGC Plaintiffs.

## EIGHTH CAUSE OF ACTION
## CONSPIRACY
**(By Plaintiffs against NASSAR, USAG, The USOC, and MSU and Each of Them and Does 1 - 500)**

92.   AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 91, as though fully set forth herein here at and by this reference made a part hereof.

93.   AOGC Plaintiffs were harmed by MSU, USAG, and The USOC, in their pursuit of a systematic cover up of the alleged sexual abuse of NASSAR and others like him, in order to prevent financial harm and liability as well as damaging their reputations permanently, breached their contract with AOGC Plaintiffs and committed Fraud and Unfair Business Practices, Negligence and Concealment as well.

94.   MSU, USAG, and The USOC are all jointly and severally responsible for the harm because each was part of and acted in the furtherance of a conspiracy to defraud AOGC Plaintiffs, their gymnasts, parents, and others similarly situated with AOGC. A conspiracy is an agreement by two or more persons to commit a wrongful act. Such an agreement was made here and was done so by the implied by the conduct of the parties. Clearly each Defendant here planned to cover up, rather than report the original wrongdoing f NASSAR. It was this cover up that was the wrongful act to defraud and avoid liability that are the crux of this cause of action.

95.   A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between each of the Defendants here and inferred by their contractual and financial obligations to one another. All of the Defendants have like interests in covering up sexual abuses so as to preserve their own public image and reputation, so they could retain students, faculty, staff, donors, clients, boosters, participants, members, and or the like, and acquire new students, faculty, staff, donors, clients, boosters, participants, members, and or the like, thus allowing donations and other financial support to continue flowing into their coffers for financial gain, and also to avoid liability and damages to their reputations and the consequences

1  finically associated therewith, and thus all stand to and did benefit, at least for a time, from the

2  conspiracy, sufficiently so to cause the damages described herein to AOGC Plaintiffs.

3      96.    AOGC Plaintiffs were damaged in an amount in excess of $25,000.01 by this

4  cause of action alone and or when taken with the other causes of action herein alleged.

5      97.    According the statutes for Fraud, Deceit, and Intentional Misrepresentation, if

6  proven, AOGC Plaintiffs would be entitled to punitive and or exemplary damages. Cal. Code.

7  Civ. Proc § 3294 permits punitive and exemplary damages when Plaintiff can prove fraud,

8  malice, or oppression. As here, Defendants are clearly liable for fraud, deceit and concealment,

9  and should therefore be subject to punitive and exemplary damages in amount to be determined

10  at trial. Cal. Code. Civ. Proc. § 3294 states: (a) In an action for the breach of an obligation not

11  arising from contract, where it is proven by clear and convincing evidence that the defendant has

12  been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may

13  recover damages for the sake of example and by way of punishing the defendant. (b) An

14  employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an

15  employee of the employer, unless the employer had advance knowledge of the unfitness of the

16  employee and employed him or her with a conscious disregard of the rights or safety of others or

17  authorized or ratified the wrongful conduct for which the damages are awarded or was personally

18  guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance

19  knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or

20  malice must be on the part of an officer, director, or managing agent of the corporation." And

21  there is no question each Defendant has satisfied both section a and section b and this is liable for

22  punitive / exemplary damages.

23                          **NINTH CAUSE OF ACTION**

24  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

25    **(By Plaintiffs against USAG, and The USOC and Each of Them and Does 1 - 500)**

26      98.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 97,

27  excluding punitive damage paragraphs, as though fully set forth herein here at and by this

28  reference made a part hereof.

99.     AOGC Plaintiffs, entered into a membership agreement, which was a contract of adhesion, with USAG and thereby The USOC as well.  AOGC Plaintiffs performed fully all of their obligations under the agreement and the law. They paid there fees and did not violate any other rules or regulations.

100.    USAG and thereby The USOC did interfere with all or some or one of the above described wrongful acts incorporated herein, and as a result AOGC Plaintiffs were damaged financially and emotionally in an amount in excess of $25,001.01

## TENTH CAUSE OF ACTION
## INDEMNIFICATION
### (By Plaintiffs against NASSAR, USAG, USOC, MSU and Each of Them and Does 1 - 500)

101.    AOGC Plaintiffs hereby incorporate by this reference paragraphs 1 through 100 as though fully set forth herein here at and by this reference made a part hereof.

102.    AOGC Plaintiffs by and through the causes of action previously alleged herein have established that they were defrauded, deceived, damaged, and led to financial ruin by and through their forced association with USAG, and The USOC, NASSAR, and MSU.

103.    AOGC Plaintiffs, based on testimony from Jane LM Doe and the other class action against NASSAR et al for his sexual abuses, were not stated to have caused, contributed, knew or otherwise been able to prevent the tortious conduct of all Defendants named herein, but yet, were forced, by and through their insurance carrier, to pay out $1,000,000 for damages that were the result of the tort(s) of another.

104.    As a result of the liability incurred by NASSAR, MSU, USAG, and The USOC, for breaches of the multiple duties imposed by law, AOGC Plaintiffs were sued for liability which they were not liable for.

105.    Defendants should now be ordered to indemnify and hold harmless, AOGC Plaintiffs for the acts and omissions of NASSAR, MSU, USAG and The USOC and for the full amounts of the $1,000,000 payments made on behalf of the Defendants here who were all liable, having known of the sexual assaults and systematically concealed and covered them up denying

1  and depriving AOGC Plaintiffs of the ability to protect their gymnasts or their own reputations,
2  good will and business.

3      106.   An action for contractual indemnity is based on a party's breach of duty under a
4  contract, express or implied. West v. Superior Court, 27 Cal. App. 4th 1625, 1633 (1994).  An
5  implied contractual indemnity claim, like a traditional equitable indemnity claim, is subject to
6  the rule that a party's liability for equitable indemnity is based on its pro rata share of
7  responsibility for the damages to the injured party. Prince v. Pacific Gas & Electric Co. 45 Cal.
8  4th 1151, 1157 (2009).

9      107.   Cal. Civ. Code § 2775 states:  An agreement to indemnify against the acts of a
10 certain person, applies not only to his acts and their consequences, but also to those of his agents.
11 Cal. Civ. Code § 2777 states: One who indemnifies another against an act to be done by the
12 latter, is liable jointly with the person indemnified, and separately, to every person injured by
13 such act.

14     108.   AOGC Plaintiffs were sued for alleged negligence which alleged that they were in
15 some fashion responsible for Jane LM Doe's injuries. While the evidence indicates AOGC
16 Plaintiffs were not liable for any wrongdoing; as a joint Defendant; their insurance carrier paid
17 out for the wrongdoings of the USAG and USOC rather than risk a larger award at trial.  AOGC
18 Plaintiffs are now entitled to contractual and equitable indemnity from USOC for the portion or
19 portions of the liability that they were charged with contributing, the $1,000,000.00.

20     109.   MSU, USAG, and The USOC also owed a duty of care in hiring, supervising,
21 investigating, and reporting, which they and those of their agents, employees and assigns
22 specifically tasked with hiring, supervising, investigating and reporting, NASSAR and the
23 allegations made against him as early as the 1980s.  Had MSU fulfilled any of its duties to its
24 students, or the other under women of USAG, they would have not hired, failed to supervise,
25 failed to investigate and continued to allow NASSAR continue his abuses.

26     110.   MSU, USAG, and The USOC further failed and breached its duties to investigate
27 and/or report allegations of the sexual abuses of NASSAR, thereby allowing and permitting him

28

1   to continue to abuse young and underage women for decades.  As a result, at least one of AOGC

2   Plaintiffs gymnasts suffered extensive damages to her person and psyche.

3          111.    The result of the failures and derelictions of all of their duties of MSU, USAG,

4   and The USOC have each resulted the unfounded and unproven liability to AOGC Plaintiffs' in

5   the prior matter filed under case number 8:18-cv-1117-JLS-KES, which totals $1,000,000 paid

6   for the contractual and equitable and tortuous liabilities of one or more than one other Defendant

7   named herein.

8          112.    AOGC Plaintiffs, by and through the doctrine of indemnity, contribution and tort

9   of anther are entitled to reimbursement of the tendered $1,000,000 payment and attorney fees in

10  an amount according to proof which AOGC Plaintiffs, who were then co-defendants with MSU,

11  USAG, USOC and which were made or expended on their behalf

12

13                          **ELEVENTH CAUSE OF ACTION**

14                              **TORT OF ANOTHER**

15       **(By Plaintiffs against All Defendants and Each of Them and Does 1 - 500)**

16         113.    Plaintiffs hereby incorporate by this reference paragraphs 1 through 112 as though

17  fully set forth herein here at and by this reference made a part hereof.

18         114.    "Tort of Another" doctrine allow for the recovery of attorney's fees when a

19  defendant has wrongfully caused the plaintiff to sue a third party. See Prentice v. North Am.

20  Title Guaranty Corp., Alameda Div., 59 Cal. 2d 618, 620-21 (1963). See also Heckert v.

21  MacDonald, 208 Cal. App. 3d 832 (1989).

22         115.    Pursuant the Tort of Another Doctrine AOGC Plaintiffs were forced by and

23  through the multiple torts and breaches of contract caused by USAG, NASSAR, MSU,

24  KLAGES, and PENNY, to file suit Defendants and each them to vindicate their names and

25  compensate them for their loss of reputation and livelihood which was destroyed wholly, jointly,

26  and/or in one part or another by each and every Defendant.

27         116.    AOGC Plaintiffs should be entitled to attorney fees in this matter should they be

28  successful.

**PRAYER FOR RELIEF**

1.  Actual Damages;

2.  General Damages;

3.  Special Damages;

4.  Economic Loss;

5.  Punitive Damages / Exemplary Damages - (Cal.Civ.Code Sec 3294)

6.  Incidental and Consequential Damages;

7.  Attorney's Fees pursuant to The Tort of Another Doctrine (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618,620-21, see also *De La Hoya v. Slim's Gun Shop*, 80 Cal.App.3d Supp. 6, 7-8, 10 (1978));

8.  Costs of suit;

9.  All other relief as the Court sees just and reasonable;

DATED:  October 26, 2018       THE LAW OFFICE OF WHITNEY D. ACKERMAN

By:

Whitney D. Ackerman

Attorney for AOGC OLYMPIA
GYMNASTIC CENTER, ARTUR
AKOPYAN, and GALINA MARINOVA