1 | AMY L. VAN GELDER (*pro hac vice*)
amy.vangelder@skadden.com
2 | JESSICA A. FROGGE (*pro hac vice*)
jessica.frogge@skadden.com
3 | LAURA BERNESCU (*pro hac vice*)
laura.bernescu@skadden.com
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
5 | Chicago, IL 60606-1720
Telephone:  (312) 407-0700
6 | Facsimile:  (312) 407-0411

7 | KEVIN J. MINNICK (SBN 269620)
kevin.minnick@skadden.com
8 | KASONNI SCALES (SBN 301871)
kasonni.scales@skadden.com
9 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
10 | Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
11 | Facsimile:   (213) 687-5600

12 | Attorneys for Specially Appearing Defendant
MICHIGAN STATE UNIVERSITY

13 |

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

16 |

| | |
|---|---|
| 17  ALL OLYMPIA GYMNASTIC CENTER INC., aka ALL OLYMPIA GYMNASTIC CENTER LOS 18  ANGELES; GALINA MARINOVA; and ARTUR AKOPYAN, 19 <br><br>Plaintiffs,<br>20 <br>v.<br>21 <br>LAWRENCE NASSAR; USA 22  GYMNASTICS; THE UNITED STATES OLYMPIC COMMITTEE; 23  MICHIGAN STATE UNIVERSITY; and DOES 1 – 500,<br>24 <br>Defendants. | Case No.: 2:18-cv-10540-JLS-KES<br><br>NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;<br><br>Filed concurrently herewith: DECLARATION OF MARSHA K.S. HEIL;<br><br>DECLARATION OF JOHN AMBROSE;<br><br>DECLARATION OF MARK P. HAAS; and<br><br>[PROPOSED] ORDER.<br><br>Judge:  Hon. Josephine L. Staton<br>Hearing:  October 25, 2019<br>Time:  10:30 a.m.<br>Courtroom: 10A |

25 |
26 |
27 |
28 |

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 25, 2019, at 10:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Josephine L. Staton, in the United States District Court for the Central District of California, Southern Division, Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10A, 10th Floor, specially appearing defendant Michigan State University ("MSU") will, and hereby does, move for an order dismissing each of plaintiffs All Olympia Gymnastic Center, Galina Marinova, and Artur Akopyan's causes of action against MSU pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), on the grounds that the Court lacks subject matter jurisdiction, that the Court lacks personal jurisdiction over MSU, and that the First Amended Complaint (ECF No. 1-5) fails to state a claim against MSU upon which relief can be granted.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 9, 2019. The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers filed herein, the declarations of Marsha K.S. Heil, John Ambrose, and Mark P. Haas, and any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

DATED: August 16, 2019

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:      */s/ Amy L. Van Gelder*
                Amy L. Van Gelder

Attorneys for Specially Appearing Defendant
Michigan State University

1

# **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ........................................................................ii

3  INTRODUCTION .................................................................................... 1

4  PROCEDURAL BACKGROUND ............................................................ 2

5  ARGUMENT ........................................................................................... 3

6      I.    Sovereign Immunity Bars This Action Against MSU ........................... 3

7      II.   MSU Is Not Subject To Personal Jurisdiction In California .................. 4

8            A.    MSU Is Not Essentially At Home In California ........................... 5

9            B.    MSU Lacks Any Connections To California And This

10                Matter .......................................................................................... 7

11      III.  The FAC Fails To State A Claim Upon Which Relief Can Be

12              Granted ........................................................................................ 10

12            A.    The FAC Fails To State A Claim For Breach Of Fiduciary

13                Duty ............................................................................................ 11

14            B.    The FAC Fails To State A Claim For Fraud ............................... 13

14            C.    The FAC Fails To State A Claim For Negligence ...................... 15

15            D.    The FAC Fails To State A Claim For Violation Of The

16                Unfair Competition Law ............................................................ 18

17            E.    The FAC Fails To State A Claim For Constructive Fraud .......... 19

18            F.    The FAC Fails To State A Claim For Negligent

19                Interference With Prospective Economic Advantage .................. 20

20            G.    The FAC Fails To State A Claim For Conspiracy ...................... 21

21            H.    The FAC Fails To State A Claim For Indemnification ............... 22

22            I.    The FAC Fails To State A Claim For Tort Of Another ............... 23

22            J.    The FAC Fails To State A Claim For Attorneys' Fees

23                Pursuant To California Code Of Civil Procedure § 1021.4 ......... 25

24  CONCLUSION ........................................................................................ 25

25

26

27

28

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Aegis Software, Inc. v. 22nd District Agriculture Association*,
No. 15CV2956 BTM (BLM),
2016 WL 4542360 (S.D. Cal. Aug. 31, 2016) ................................................. 19

*AIG Specialty Insurance Co. v. Phoenician LLC*,
No. 2:13-2578 WBS CKD,
2014 WL 4795193 (E.D. Cal. Sept. 24, 2014) ................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 10, 11

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ...................................................................... 5, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 10

*Boman v. Catholic Diocese of Grand Rapids*,
No. 338458,
2018 WL 3129703 (Mich. Ct. App. June 26, 2018) ......................................... 13

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .................................................................. 5, 6, 8, 9, 10

*Bristol-Myers Squibb Co. v. Superior Court*,
1 Cal. 5th 783 (2016) ......................................................................................... 5

*California v. NRG Energy Inc.*,
391 F.3d 1011 (9th Cir. 2004) ......................................................................... 19

*Chira v. Columbia University*,
No. CV 05-1694 MMM (PJWx),
2005 WL 8156561 (C.D. Cal. May 2, 2005) ................................................. 6, 7

*Colenzo v. Federal Deposit Insurance Corp.*,
No. 09-00816 MMM (AJWx),
2010 WL 11512212 (C.D. Cal. Apr. 28, 2010) ............................................... 11

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................................... 5

*Electrical Electronic Control, Inc. v. Los Angeles Unified School District*,
126 Cal. App. 4th 601 (2005) ........................................................................... 25

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir. 1997) ......................................................................... 22

*Evan F. v. Hughson United Methodist Church*,
8 Cal. App. 4th 828 (1992) .............................................................................. 18

*Flint v. Dennison*,
  488 F.3d 816 (9th Cir. 2007) ..................................................................4

*Franchise Tax Board of California v. Hyatt*,
  139 S. Ct. 1485 (2019) ..............................................................1, 3, 4

*Gardner v. Michigan State University Board of Trustees*,
  No. 1:12-cv-1018,
  2014 WL 558818 (W.D. Mich. Feb. 11, 2014) ........................................4

*Hann v. Canyon Mobile Home Park*,
  No. EDCV 16-02338 JGB (SPx),
  2017 WL 10560528 (C.D. Cal. May 23, 2017)................................12, 20

*Heckert v. MacDonald*,
  208 Cal. App. 3d 832 (1989) ...................................................................24

*Hill v. Board of Trustees of Michigan State University*,
  182 F. Supp. 2d 621 (W.D. Mich. 2001) ...................................................4

*Hodge v. Kirkpatrick Development, Inc.*,
  130 Cal. App. 4th 540 (2005) ..................................................................23

*Hooks v. Southern California Permanente Medical Group*,
  107 Cal. App. 3d 435 (Ct. App. 1980) ......................................................16

*Hughey v. Ausborn*,
  249 S.C. 470 (1967)...................................................................................17

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................5

*Jamison v. Kaiser Foundation*,
  2014 WL 2766117 (E.D. Cal. June 18, 2014) ..........................................13

*Junod v. Mortgage Electronic Registration Systems, Inc.*,
  584 F. App'x 465 (9th Cir. 2014)..............................................................12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..................................................................11

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)........................................................15, 20, 21

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*,
  12 Cal. 4th 291 (1995) ..............................................................................10

*Manzarek v. St. Paul Fire & Marine Insurance Co.*,
  519 F.3d 1025 (9th Cir. 2008) ..................................................................10

*Marroquin v. Pfizer, Inc.*,
  367 F. Supp. 3d 1152 (E.D. Cal. 2019) ....................................................14

*Mega RV Corp. v. HWH Corp.*,
  225 Cal. App. 4th 1318 (2014)..................................................................24

*Missud v. City & County of San Francisco*,
    No. 15-CV-05596-JCS,
    2017 WL 1064984 (N.D. Cal. Mar. 21, 2017) ..................................................19

*Nanonexa Corp. v. University of Chicago*,
    No. 10-cv-2631-LHK,
    2010 WL 4236855 (N.D. Cal. Oct. 21, 2010) ....................................................6

*National Medical Transportation Network v. Deloitte & Touche*,
    62 Cal. App. 4th 412 (1998) ..............................................................................21

*People v. Superior Court*,
    9 Cal. 3d 283 (1973) ..........................................................................................17

*Pew v. Michigan State University*,
    859 N.W.2d 246 (Mich. App. 2014) ...................................................................4

*Powerex Corp. v. Reliant Energy Services, Inc.*,
    551 U.S. 224 (2007) ..........................................................................................19

*Prentice v. North American Title Guaranty Corp.*,
    59 Cal. 2d 618 (1963) ..........................................................................23, 24, 25

*Redmond v. San Jose Police Department*,
    No. 14-CV-02345-BLF,
    2015 WL 4940897 (N.D. Cal. Aug. 19, 2015) ................................................22

*Roman v. Liberty University, Inc.*,
    162 Cal. App. 4th 670 (2008) ..............................................................................9

*Shahangian v. Bank of America National Association*,
    No. CV15-1919 DMG (MRWx),
    2015 WL 12696038  (C.D. Cal. Dec. 1, 2015) ...........................................13, 14

*Simmonds v. Catholic Healthcare West*,
    No. C 05-00268 MHP,
    2005 WL 8162763 (N.D. Cal. July 5, 2005) ....................................................24

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .......................................................................11, 21

*Sprewell v. Golden State Warriors*,
    275 F.3d 1187 (9th Cir. 2001) ...........................................................................11

*Thomas v. Thomas*,
    No. SACV 14-1096-JLS (RNBx),
    2015 WL 12681311 (C.D. Cal. May 8, 2015) ..............................................5, 9

*Trinkle v. California State Lottery*,
    71 Cal. App. 4th 1198 (1999) ............................................................................19

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) .............................................................................6

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015)..................................................21

*United National Maintenance, Inc. v. San Diego Convention Center Corp.*,
    No. 07-CV-2172 BEN,
    2010 WL 3034024 (S.D. Cal. Aug. 3, 2010) ...................................19

*United States v. Hall Family Trust Dated June 8, 2001*,
    No. 16-CV-0538-AJB-BGS,
    2019 WL 1429572 (S.D. Cal. Mar. 29, 2019)..................................22

*Vacco Industries, Inc. v. Van Den Berg*,
    5 Cal. App. 4th 34 (1992) .........................................................24, 25

*Vargo v. Sauer*,
    576 N.W.2d 656 (Mich. 1998) .........................................................4

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014) .....................................................................10

*Weisbord v. Michigan State University*,
    495 F. Supp. 1347 (W.D. Mich. 1980).............................................4

*In re Wholesale Electricity Antitrust Cases I & II*,
    Nos. CV 02-0990-RHW, CV 02-1000-RHW, CV 02-1001-RHW,
    2002 WL 34165887 (S.D. Cal. Dec. 17, 2002)...............................19

*World Surveillance Group Inc. v. La Jolla Cove Investors, Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) .......................................11, 12

## STATUTES

36 U.S.C. § 220505(b)(9) .....................................................................3

Cal. Bus. & Prof. Code § 17200 ...........................................................3

Cal. Bus. & Prof. Code § 17201 .........................................................19

Cal. Bus. & Prof. Code § 17203 .........................................................19

Cal. Civ. Code § 2772.........................................................................22

Cal. Civ. Code § 3294.........................................................................17

Cal. Civ. Proc. Code § 410.10 ..............................................................5

Cal. Civ. Proc. Code § 877 .........................................................2, 3, 23

Cal. Civ. Proc. Code § 877.6 ......................................................2, 3, 23

Cal. Civ. Proc. Code § 1021 ...............................................................24

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1

Cal. Civ. Proc. Code § 1021.4 ...................................................................... 3, 25

2

Cal. Penal Code § 11166 ................................................................................ 13

3

Mich. Comp. Laws § 390.101, *et seq.* ........................................................... 4

4

Mich. Comp. Laws § 600.6431 ....................................................................... 4

5

Mich. Comp. Laws § 691.1401(g) ................................................................... 4

6

Mich. Comp. Laws § 691.1407 ...................................................................... 10

7

Mich. Const. art. 8, § 4 .................................................................................... 4

8

## RULES

9

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 25

10

Fed. R. Civ. P. 12(b)(2) ........................................................................... 1, 6, 25

11

Fed. R. Civ. P. 12(b)(6) ....................................................................... 2, 10, 25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1

## INTRODUCTION

2     Specially appearing defendant Michigan State University ("MSU") is an

3 extension of the state of Michigan and is therefore immune from this suit.  The

4 United States Supreme Court held unequivocally in *Franchise Tax Board of*

5 *California v. Hyatt* that the U.S. Constitution does not "permit[] a State to be sued by

6 a private party without its consent in the courts of a different State."  139 S. Ct. 1485,

7 1490 (2019).[1]  MSU has not given its consent.  Thus, Michigan's constitutional right

8 to sovereign immunity requires that this lawsuit brought by plaintiffs All Olympia

9 Gymnastic Center, Galina Marinova, and Artur Akopyan (altogether, "AOGC") be

10 dismissed as against MSU for lack of subject matter jurisdiction under Rule 12(b)(1).

11     This Court also lacks personal jurisdiction over MSU.  AOGC has not pled the

12 requisite minimum contacts between MSU and California in its operative First

13 Amended Complaint (ECF No. 1-5) ("FAC"), nor could it.  MSU is patently not "at

14 home" in California, and is not alleged to have directed any relevant conduct at the

15 forum.  This action must therefore also be dismissed under Rule 12(b)(2).

16     Finally, even if there were jurisdiction, AOGC has no legal basis to sue MSU.

17 The FAC is based entirely on alleged harm to AOGC caused by AOGC's affiliation

18 with USA Gymnastics:  AOGC alleges that it shared a contractual relationship with

19 USA Gymnastics that required AOGC to send its customer-athletes to a USA

20 Gymnastics-controlled training facility in Texas where Nassar assaulted AOGC's

21 customers, including Jane LM Doe.  AOGC alleges that its business was damaged

22 when Jane LM Doe sued and AOGC's affiliation with Nassar was publicized.  But,

23 critically, AOGC does not allege *any* relationship whatsoever between itself and

24 MSU.  AOGC's relationship with Jane LM Doe does not connect MSU to AOGC, as

25 there is no allegation that Jane LM Doe was ever an MSU student or has even set

26 _____

27 [1] All internal citations, quotations, and alterations are omitted and all emphases are
28 added unless otherwise stated.

1

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1   foot on MSU's campus.   Nor does the FAC adequately allege that MSU's

2   employment of Nassar connects MSU to AOGC; instead, the FAC alleges that

3   Nassar's relationship with USA Gymnastics linked AOGC, through Jane LM Doe, to

4   Nassar's crimes in the eyes of the public.   More generally, AOGC fails to allege that

5   it has ever interacted with a single MSU employee (not even Nassar) or

6   communicated in any way with MSU.   It is therefore unsurprising that AOGC fails to

7   allege any actionable fiduciary duty, duty of care, contract, or indemnification

8   obligation as between AOGC and MSU.   Although the Court need not reach the

9   adequacy of these allegations given the incontrovertible lack of jurisdiction,

10  Plaintiffs have not pled legally cognizable claims against MSU under Rule 12(b)(6).

11  ## PROCEDURAL BACKGROUND

12          In 2018, the parties to this action, AOGC, MSU, USA Gymnastics, the United

13  States Olympic Committee, and Nassar, were all codefendants and alleged joint

14  tortfeasors in a case brought by Jane LM Doe and removed to this Court on

15  June 22, 2018.   (*See Jane LM Doe v. Nassar, et al.*, No. 8:18-cv-1117-JLS-KES

16  (C.D. Cal.) (ECF No. 1-1).)   After MSU's settlement with Jane LM Doe, the Court

17  granted MSU's Motion for Good Faith Settlement Determination pursuant to

18  California Code of Civil Procedure sections 877 and 877.6, and thereby barred all

19  claims against MSU for "contribution, equitable indemnity, partial or comparative

20  indemnity, reimbursement, or declaratory relief."   (*Id*. (ECF No. 114 ¶¶ 2, 3).)[2]

21  _____

22  [2] AOGC initially opposed MSU's Motion for Good Faith Settlement Determination

23  on the "very specific grounds" that MSU was allegedly attempting to "strategically
    limit its liability [to] its co-defendants."   (*Id*. (ECF No. 102 at 7).)   In response, MSU

24  explained that section 877.6 only bars claims for contribution and indemnity for
    amounts paid by alleged joint tortfeasors *to plaintiff Jane LM Doe*, not independent

25  claims asserted by AOGC against MSU.   (*Id*. (ECF No. 105 at 4).)   Thereafter, the
    Court ordered AOGC to file a notice explaining whether AOGC still opposed MSU's

26  motion in light of MSU's response (*id*. (ECF No. 108)), and AOGC withdrew its
    opposition (*id*. (ECF No. 111)).   Nevertheless, AOGC is inexplicably seeking

27  contribution and indemnity claims in this action (FAC ¶ 115), even though those
    claims were barred pursuant to California Code of Civil Procedure sections 877 and

28  877.6.

1   On October 26, 2018, AOGC brought this suit in Los Angeles Superior Court.
2   AOGC thereafter filed the operative FAC, dated November 1, 2018 (ECF No. 1-5).
3   On December 19, 2018, the United States Olympic Committee removed the action to
4   this Court pursuant to 36 U.S.C. § 220505(b)(9).  (ECF No. 1.)  In the FAC, AOGC
5   asserts nine causes of action against MSU for breach of fiduciary duty (FAC ¶¶ 37-
6   50), fraud, deceit, concealment, and deceptive practices (FAC ¶¶ 51-63), negligence
7   (FAC ¶¶ 64-71), unfair business practices pursuant to California Business and
8   Professions Code section 17200 (FAC ¶¶ 72-80), constructive fraud (FAC ¶¶ 81-86),
9   negligent interference with prospective economic advantage (FAC ¶¶ 87-91),
10  conspiracy (FAC ¶¶ 92-97), indemnification (FAC ¶¶ 103-115), and tort of another
11  (FAC ¶¶ 116-119).  AOGC also requests attorneys' fees from MSU pursuant to
12  California Code of Civil Procedure section 1021.4.  (FAC ¶ 20.)

## ARGUMENT

## I.   Sovereign Immunity Bars This Action Against MSU

15      This Court lacks subject matter jurisdiction over AOGC's case because MSU
16  has a constitutional right to sovereign immunity from suit in California.   The
17  Supreme Court has recently and definitively held that "States retain their sovereign
18  immunity from private suits brought in the courts of other States." *Hyatt*, 139 S. Ct.
19  at 1492.   In *Hyatt*, the Court considered whether the Franchise Tax Board of
20  California could be sued in Nevada for torts allegedly committed during a tax audit.
21  *Id.* at 1490.   Overruling its prior decision to the contrary, the Court held that
22  allowing one state to subjugate another sovereign state to suit in a foreign court
23  would undermine "[a]n integral component of the state's sovereignty"—its immunity
24  from private suit—which the Constitution preserves and confirms.  *Id.* at 1493, 1499.

25      There is no question that *Hyatt* applies to this case. Michigan statutory law
26  expressly includes MSU in the definition of "State" for purposes of sovereign
27  immunity.  Mich. Comp. Laws § 691.1401(g) ("State includes a public university or
28  college of this state . . . .").  Moreover, the Michigan Constitution and statutes reflect

3

1  that MSU is an arm of the state of Michigan.  *See, e.g.*, Mich. Const. art. 8, § 4

2  (requiring the Michigan legislature to "appropriate moneys" to MSU); Mich. Comp.

3  Laws § 390.101, *et seq.* (establishing laws relating to MSU and prescribing powers

4  of MSU's board of trustees).  Additionally, the Michigan Supreme Court found it to

5  be "undisputed" that MSU is "an extension of the state [of Michigan], generally . . .

6  entitled to invoke sovereign immunity."  *Vargo v. Sauer*, 576 N.W.2d 656, 664

7  (Mich. 1998).  Indeed, even AOGC concedes that MSU "is a public university

8  organized and existing under the laws of the State of Michigan," subject to the notice

9  of claim requirements for suits against the state of Michigan.  (FAC ¶ 24 (citing

10 Mich. Comp. Laws § 600.6431).)  Thus, it is unsurprising that state and federal

11 courts unfailingly recognize MSU as a state entity, entitled to the privileges and

12 immunities afforded to the state of Michigan.  *See, e.g.*, *Gardner v. Mich. State Univ.*

13 *Bd. of Trs.*, 2014 WL 558818, at *5 (W.D. Mich. Feb. 11, 2014) ("Michigan State

14 University is an arm of the state of Michigan"); *Hill v. Bd. of Trs. of Mich. State*

15 *Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001); *Weisbord v. Mich. State Univ.*,

16 495 F. Supp. 1347, 1356-57 (W.D. Mich. 1980); *Vargo*, 576 N.W.2d at 664; *Pew v.*

17 *Mich. State Univ.*, 859 N.W.2d 246, 253 (Mich. App. 2014).  This is in line with

18 Ninth Circuit precedent recognizing that "a state university is an arm of the state

19 entitled to . . . immunity."  *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

20      MSU's incontestable status as an extension of the state of Michigan entitles it

21 to sovereign immunity under *Hyatt* and bars this suit from proceeding in California.

22 AOGC's complaint must therefore be dismissed.

23 **II.    MSU Is Not Subject To Personal Jurisdiction In California**

24      AOGC's FAC must also be dismissed because it did not—and cannot—make

25 even a prima facie showing of personal jurisdiction over MSU in California.

26 California's long-arm statute allows personal jurisdiction to be exercised over a

27 nonresident entity, like MSU, only if it comports with due process.  *See* Cal. Civ.

28 Proc. Code § 410.10.  For due process to be satisfied, "a nonresident defendant must

1  have certain minimum contacts with the forum such that the maintenance of the suit
2  does not offend traditional notions of fair play and substantial justice." *Axiom*
3  *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citing *Int'l*
4  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The primary focus of [the]
5  personal jurisdiction inquiry is the defendant's relationship to the forum State."
6  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017).
7  Depending on the defendant's relationship with the forum state, a court may obtain
8  either general or specific jurisdiction over a defendant, or personal jurisdiction may
9  be lacking altogether and the suit must be dismissed.  *See, e.g.*, *Thomas v. Thomas*,
10  2015 WL 12681311, at *2, *6 (C.D. Cal. May 8, 2015) (Staton, J.).  AOGC does not
11  specify which type of personal jurisdiction it would invoke, but the allegations and
12  the evidence submitted herewith demonstrate beyond a doubt that neither general nor
13  specific personal jurisdiction exists.  (*See* FAC ¶ 29.)

14    A.    <u>**MSU Is Not Essentially At Home In California**</u>

15      General jurisdiction, which allows a court to hear "any and all claims" against
16  a defendant, even if all the facts underlying the claims occurred in a different state,
17  can be obtained only if a defendant's contacts are so "continuous and systematic as
18  to render it essentially at home in the forum State," in the same way that a place of
19  incorporation or a principal place of business renders a corporation at home.
20  *Daimler AG v. Bauman*, 571 U.S. 117, 122, 138-39 (2014).  Accordingly, courts are
21  reluctant to exercise general jurisdiction over nonresident entities even in the face of
22  a defendant's substantial contacts with a forum state.  *See, e.g.*, *Bristol-Myers Squibb*
23  *Co. v. Superior Court*, 1 Cal. 5th 783, 796-97 (2016), *rev'd on other grounds*, 137 S.
24  Ct. 1773 (2017); *Chira v. Columbia Univ.*, 2005 WL 8156561, at *8 (C.D. Cal. May
25  2, 2005) (noting that "the Supreme Court has upheld general jurisdiction only
26  once"); *Nanonexa Corp. v. Univ. of Chi.*, 2010 WL 4236855, at *3 (N.D. Cal. Oct.
27  21, 2010) ("[C]ourts are understandably reluctant to exercise general jurisdiction."
28  (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171-74 (9th Cir.

5

1    2006))).   Indeed, state and federal courts in California have refused to exercise

2    general jurisdiction over nonresident universities despite evidence, as plaintiffs recite

3    here, that the universities sent employees to recruiting events, recruited students, and

4    fundraised in California.  *See, e.g.*, *Chira*, 2005 WL 8156561, at *5-9 ("Courts have

5    generally held that [contacts such as recruiting students and soliciting donations from

6    alumni] are insufficient to support the exercise of general jurisdiction over an out-of-

7    state university.") (listing cases). (*See* FAC ¶¶ 21-22.)

8        AOGC does not allege any facts from which it could be inferred that MSU is

9    at home in California, instead admitting that MSU is organized and operated in

10   Michigan. (*Id.* ¶¶ 21, 24.)   Re-pleading could not cure this deficiency.   MSU is

11   neither registered nor incorporated in California.  (Haas Decl. ¶ 7.[3])  It does not own

12   or lease any land or assets in California, and it does not have any offices in

13   California.   (*Id.*)   MSU does not maintain an address or telephone number in

14   California, has not designated an agent for service of process in California, and is not

15   authorized to conduct business there.  (*Id.*)  While MSU has over 42,000 employees,

16   only eleven reside in California, including a retired professor, a professor with a

17   partial MSU appointment, two researchers working on a joint collaboration between

18   MSU and the Lawrence Berkley National Lab, temporary support staff, and an

19   instructor for online courses.  (*Id.* ¶ 8.)  Five of the eleven employees work out of

20   their own homes on matters limited to alumni engagement, fundraising, and

21   admissions recruiting.  (*See* Haas Decl. ¶ 8; Ambrose Decl. ¶¶ 6, 7; Heil Decl. ¶¶ 9,

22   12, 15.)  As a result, in 2018, MSU remitted employee withholdings in California

23   totaling a mere $35,439, or 0.08% of the total employee withholdings MSU remitted

24   in 2018.  (Haas Decl. ¶ 8.)

25

26

27  [3] Under Federal Rule of Civil Procedure 12(b)(2), this Court "may decide a question of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties." *Chira*, 2005 WL 8156561, at *3.

28

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1     Like any national university, MSU recruits students and conducts fundraising

2 and alumni outreach in California.  (*See* Ambrose Decl. ¶¶ 6, 7; Heil Decl. ¶¶ 8-9,

3 11-13.)   Notably, MSU does not employ any recruiting officers in California

4 specifically dedicated to student athlete recruitment.  (Ambrose Decl. ¶ 8; *contra*

5 FAC ¶ 20.)  Overall, MSU recruits a minimal number of Californians.  During fiscal

6 years 2016, 2017, and 2018, less than 3% of applicants for admission to MSU were

7 from California, resulting in approximately 1.5% of MSU's entering freshman

8 classes enrolled from California.  (Ambrose Decl. ¶ 9.)  As a result, less than 2% of

9 MSU's aggregate gross tuition revenues for fiscal years 2016 through 2018 came

10 from entering students from California. (*Id.* ¶ 10.)  MSU's fundraising in California

11 is similarly minimal.  In fiscal year 2019, approximately 2% of MSU's private sector

12 donors were from California.  (Heil Decl. ¶ 10.)

13     These facts establish that this Court may not exercise general jurisdiction over

14 MSU.   MSU's recruiting and fundraising practices that touch minimally on

15 California are insufficient to support the exercise of general jurisdiction.  *See Chira*,

16 2005 WL 8156561, at *5-9.  This conclusion is consistent with

> 17 18 19 20 [o]ther courts [that] have also held that an out-of-state school is not subject to general jurisdiction simply because students from the forum matriculate at the school, because the institution receives revenue from the forum through tuition or fund-raising activities, because it maintains contacts with alumni in the forum, or because it conducts general recruiting activities there.

21 *Id.* at *6 (collecting cases).   To hold otherwise would be to subject national

22 universities, like MSU, to suit "in most, if not every, state" where applicants, alumni,

23 or donors choose to reside.  *Id.*

24  **B.**   **MSU Lacks Any Connections To California And This Matter**

25     Specific jurisdiction may be exercised only where "the *suit . . .* [arises] out of

26 or relat[es] to the defendant's contacts with the *forum*."  *Bristol-Myers Squibb*, 137

27 S. Ct. at 1780.  Thus, "for a court to exercise specific jurisdiction over a claim, there

28 must be an affiliation between the forum and the underlying controversy, principally,

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1   an activity or an occurrence that takes place in the forum State." *Id.* at 1781. "When

2   there is no such connection, specific jurisdiction is lacking *regardless of the extent of*

3   *a defendant's unconnected activities in the State*." *Id.*   California courts apply a

4   three-part test to determine whether specific jurisdiction over a nonresident

5   defendant is appropriate:

6          (1) the defendant must either purposefully direct his
           activities toward the forum or purposefully avail himself of
7          the privilege of conducting activities in the forum;

8          (2) the claim must be one which arises out of or relates to
           the defendant's forum-related activities; and
9

10         (3) the exercise of jurisdiction must comport with fair play
           and substantial justice, i.e. it must be reasonable.

11  *Axiom Foods*, 874 F.3d at 1068.

12         Where, as here, a case sounds in tort,[4] California courts employ the purposeful

13  direction test for the first element listed above, which requires that the defendant

14  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

15  harm that the defendant knows is likely to be suffered in the forum state." *Id.* at

16  1069.   A plaintiff's own forum connections and the foreseeability that the plaintiff

17  would suffer harm in the forum as a result, however, will *not* satisfy the purposeful

18  direction test. *Id.* at 1069-70. Nor will a "defendant's relationship with a third party,

19  standing alone." *Bristol-Myers Squibb*, 137 S. Ct. at 1781. Similarly, a defendant's

20  unrelated contacts with California are not "sufficient—or even relevant"—to the

21  exercise of specific jurisdiction. *Id.*   What is required instead "is a connection

22  between the forum and the specific claims at issue." *Id.*   "[R]andom, fortuitous or

23  attenuated contacts with the forum state" simply will not do. *Thomas*, 2015 WL

24  12681311, at *3.

25         AOGC does not—because it cannot—point to any connections between MSU,

26  California, and the specific claims at issue here.   There is no allegation MSU

27  _____

28  [4] The FAC's contract-based claims do not name MSU.  (FAC ¶¶ 30-36, 98-102.)

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

"specifically directed" any conduct at California.  MSU has not communicated or entered into any contracts with AOGC.  (*See* Haas Decl. ¶ 10.)  In fact, prior to Jane LM Doe's lawsuit in 2018, there is nothing to suggest that MSU was even aware of AOGC or its alleged connection to Nassar or California.

Moreover, AOGC admits that the underlying misconduct that gave rise to its alleged damages—the abuse of AOGC's customer, Jane LM Doe, by Nassar—occurred outside of California at the Karolyi Ranch in Texas. (*See* FAC ¶¶ 91, 114 (citing *Jane LM Doe v. Nassar, et al.*, No. 8:18-cv-1117-JLS-KES (C.D. Cal.)); Second Am. Compl. at ¶ 5, *Jane LM Doe v. Nassar, et al.*, No. 8:18-cv-1117-JLS-KES (ECF No. 20).)  The allegations make clear that Nassar committed an intentional tort against Jane LM Doe in Texas; this does not amount to wrongful conduct by MSU aimed at AOGC in California.[5]  Even if Nassar was under MSU's auspices while at the Karolyi Ranch—which MSU strongly disputes—Nassar's conduct in Texas did not target AOGC in California.[6]

While AOGC itself alleges connections to California, the law is clear that AOGC's contacts alone cannot give rise to specific personal jurisdiction over MSU. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).  "[T]he plaintiff[s] cannot be the

---

[5] AOGC does not allege that MSU's student recruiting activity in California supplies specific jurisdiction here, and for good reason.  California's long-arm statute does not extend specific jurisdiction to out-of-state universities for tort claims that are unrelated to the alleged recruiting activity.  For instance, in *Liberty University*, recruiting activity aimed *at the plaintiff himself* was insufficient to subject the university to jurisdiction for unrelated torts that occurred while the plaintiff was a student. *Roman v. Liberty Univ., Inc.*, 162 Cal. App. 4th 670, 680 (2008) (finding university's contacts with California insufficient to establish specific personal jurisdiction for the claims of student, recruited in California to play football at the university in Virginia, who was injured by roommate in Virginia). Here, the alleged recruiting is even farther removed, as there is no allegation that MSU ever recruited or enrolled Jane LM Doe, much less directed tortious activity toward the gym she privately patronized in California.

[6] Nor could MSU be liable for Nassar's sexual assaults, which were clearly outside the scope of his employment.  *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 304 (1995) (concluding that an ultrasound technician's "deliberate, independently motivated sexual battery" was outside the scope of his employment with the defendant hospital).

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1  only link between the defendant and the forum.  Rather it is the defendant's conduct

2  that must form the necessary connection with the forum State that is the basis for its

3  jurisdiction over him."  *Id.*  Because MSU did not commit any intentional act

4  expressly aimed at AOGC in California, the requisite link between MSU, California,

5  and this controversy is absent, and the exercise of specific jurisdiction over MSU

6  would be improper.[7]

7  **III.    The FAC Fails To State A Claim Upon Which Relief Can Be Granted**

8           To survive a Rule 12(b)(6) motion, the FAC must plead "enough facts to state

9  a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

10 544, 570 (2007).  A claim is facially plausible when supported by "factual content

11 that allows the court to draw the reasonable inference that the defendant is liable for

12 the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing

13 the plausibility of a complaint, courts "accept factual allegations in the complaint as

14 true," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

15 2008), but may disregard legal conclusions, *Iqbal*, 556 U.S. at 678.  Courts also need

16 not "accept as true allegations that are merely conclusory, unwarranted deductions of

17 fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979,

18 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

19 Further, courts need not "accept as true . . . legal conclusions cast in the form of

20 factual allegations." *Colenzo v. FDIC*, 2010 WL 11512212, at *2 (C.D. Cal. Apr.

21 28, 2010).

22

23  ——————————

24  [7] When determining the presence of either type of personal jurisdiction, the primary
concern is "the burden on the defendant." *Bristol-Myers Squibb*, 137 S. Ct. at 1780.
25  This burden encompasses not only practical problems of litigating in a foreign
forum, but also "the more abstract matter of submitting to the coercive power of a
26  State that may have little legitimate interest in the claims in question." *Id.* The
burden on MSU and federalism of litigating this matter in California is amplified
27  here, where the defendant, a Michigan state entity, does not have the necessary
contacts with California and enjoys broad sovereign immunity from suit. *See* Mich.
28  Comp. Laws § 691.1407. For this reason too, the FAC must be dismissed.

1  Under Rule 9(b), a plaintiff must plead the circumstances of fraud with
2  particularity "irrespective of the source of the subject matter jurisdiction, and
3  irrespective of whether the substantive law at issue is state or federal." *Kearns v.*
4  *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Averments of fraud must be
5  accompanied by the who, what, when, where, and how of the misconduct charged."
6  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

7  Under these pleading standards, the FAC fails to state any legally cognizable
8  claims against MSU.

9  **A.     The FAC Fails To State A Claim For Breach Of Fiduciary Duty**

10  "The elements of a cause of action for breach of fiduciary duty are: 1) the
11  existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting
12  damage." *Colenzo*, 2010 WL 11512212, at *6. The FAC fails to state a claim for
13  breach of fiduciary duty because it alleges no facts that could support the existence
14  of a fiduciary duty owed by MSU to AOGC.

15  "California state law on this issue is straightforward. A fiduciary relationship
16  is a special circumstance in which the fiduciary assumes duties beyond those of mere
17  fairness and honesty and must undertake to act on behalf of the beneficiary, giving
18  priority to the best interest of the beneficiary." *World Surveillance Grp. Inc. v. La*
19  *Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1235-36 (N.D. Cal. 2014). "The
20  obligation to put the interests of the other party first is why a fiduciary relationship
21  generally does not arise out of ordinary arms-length business dealings." *Id.* ("In a
22  typical business contract or relationship, one party does not commit to act in the
23  other party's best interest rather than in its own."). Thus, "[b]efore a person can be
24  charged with a fiduciary obligation to another, he or she must either knowingly
25  undertake to act on behalf and for the benefit of another, or must enter into a
26  relationship which imposes that undertaking as a matter of law." *Hann v. Canyon*
27  *Mobile Home Park*, 2017 WL 10560528, at *11 (C.D. Cal. May 23, 2017).
28  Fiduciary relationships are imposed by law only in "special relationships such as

11

1  agency, partnership or joint venture." *World Surveillance Grp. Inc.*, 66 F. Supp. 3d
2  at 1235.

3  There is no non-conclusory allegation of any relationship between MSU and
4  AOGC, much less a special relationship.  At most, the FAC alleges that MSU
5  employed Nassar; that Nassar abused and assaulted Jane LM Doe in Texas; that Jane
6  LM Doe also patronized AOGC in Los Angeles; and that the connection between
7  AOGC and USA Gymnastics through Jane LM Doe caused the public to wrongly
8  associate Nassar with AOGC.  (FAC ¶¶ 2, 7, 21, 89.)  This attenuated connection
9  between MSU and AOGC does not as a matter of law create fiduciary obligations—
10  and it is facially implausible that a public university in Michigan would undertake
11  such a relationship with a private gym in Los Angeles in any event.  *See Junod v.*
12  *Mortg. Elec. Registration Sys., Inc.*, 584 F. App'x 465, 467 (9th Cir. 2014)
13  ("Dismissal was correctly entered because . . . allegation [was] not plausible.").
14  Moreover, AOGC's conclusory allegations of a free floating duty without such a
15  relationship (*see* FAC ¶ 39) fail as a matter of law.  *See World Surveillance Grp.*
16  *Inc.*, 66 F. Supp. 3d at 1236 (dismissing breach of fiduciary duty claim with
17  prejudice where plaintiff only made "conclusory allegations" and "offer[ed] no facts
18  whatsoever showing that [defendant] knowingly undertook the duty of putting
19  [plaintiff's] interests before its own" in "arms-length business deal[]").

20  Absent a special relationship, AOGC must allege some commitment or
21  undertaking beyond the existence of an arms-length transaction or business dealing.
22  But the FAC alleges no such commitment or undertaking by MSU.  On the contrary,
23  to the extent any commitment or undertaking is alleged, the FAC limits that
24  commitment to an agreement among the *defendants*, not with AOGC.  The FAC
25  alleges that MSU, USA Gymnastics, and the United States Olympic Committee
26  agreed "to act for the benefit of *their own* reputation and good will."  (FAC ¶ 47.)
27  Such an agreement is fundamentally inconsistent with an agreement to put *AOGC's*
28  interests first, which would be required to state a claim.

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1  AOGC also tries to create a fiduciary relationship out of MSU's alleged "duty
2  to report," but that fails as well.  (FAC ¶ 45.)  AOGC does not identify any laws
3  creating the alleged duty to report, nor explain whether such a statute creates a
4  private right of action, and AOGC never alleges to whom the duty to report runs.  In
5  any event, mandated reporter statutes do not automatically create private rights of
6  action and even if they do, such a right would at most create a duty of care running to
7  an identifiable abused child athlete, *not* a fiduciary relationship with her coaches or
8  gym.  *See Boman v. Catholic Diocese of Grand Rapids*, 2018 WL 3129703, at *5
9  (Mich. Ct. App. June 26, 2018) ("Michigan's child abuse reporting statute creates a
10  private right of action *only* in an identified abused child." (emphasis in original));
11  *Jamison v. Kaiser Found.*, 2014 WL 2766117, at *3 (E.D. Cal. June 18, 2014)
12  (holding that California's mandated reporter statute, California Penal Code section
13  11166, "does not provide a private right of action").  Accordingly, an alleged
14  mandatory reporting requirement does not create a fiduciary relationship.  Thus, the
15  breach of fiduciary duty claim against MSU should be dismissed with prejudice.

16  **B.   The FAC Fails To State A Claim For Fraud**

17  AOGC's fraud claims against MSU do not satisfy the heightened pleading
18  requirements of Rule 9(b).  "Under California law, the elements of fraud are (1) a
19  misrepresentation or concealment; (2) with knowledge of its falsity; (3) with intent to
20  defraud; (4) justifiable reliance; and (5) resulting damages."  *Shahangian v. Bank of*
21  *Am. Nat'l Ass'n*, 2015 WL 12696038, at *3 (C.D. Cal. Dec. 1, 2015).  "Additionally,
22  when the defendant is an entity, a complaint generally must also identify the person
23  who made the false representations on behalf of the entity."  *Marroquin v. Pfizer,*
24  *Inc.*, 367 F. Supp. 3d 1152, 1166 (E.D. Cal. 2019).  For example, in *Shahangian*, the
25  district court dismissed plaintiff's fraud claims because the supporting allegations
26  were "insufficient . . . for lack of date and location of each misrepresentation and the
27  names of the [defendant] employees who made the misrepresentations."  2015 WL
28  12696038, at *4.

Here too, AOGC's allegations of fraud plainly lack the specificity required of a fraud claim under Rule 9(b).  Rather, AOGC broadly alleges that "MSU, USAG, and [t]he USOC each on numerous occasions represented, promised and assured AOGC Plaintiffs and other parents and coaches that NASSAR was safe, and qualified to medically treat their young child athletes, while also knowing and having reason to know that NASSAR was a sexual predator, who should not have had contact with anyone for any reason."  (FAC ¶ 59.)  Nowhere does AOGC allege the date and location of each supposed misrepresentation or the names of the employees who allegedly made the misrepresentations to AOGC.  And, again, there is no plausible basis to conclude that MSU ever communicated at all with AOGC prior to Jane LM Doe's lawsuit.   The FAC therefore fails to specify any affirmative misrepresentation to AOGC that can be attributed to MSU.  *See Shahangian*, 2015 WL 12696038, at *4.

To the extent AOGC attempts to plead a fraudulent concealment claim, the FAC must allege with particularity:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Marroquin*, 367 F. Supp. 3d at 1166.

"There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  Other than the first instance, in which there must be a fiduciary relationship

1   between the parties, "[e]ach of the other three circumstances in which nondisclosure
2   may be actionable presupposes the existence of some other relationship between the
3   plaintiff and defendant in which a duty to disclose can arise." *Id*. at 336-37. "As a
4   matter of common sense, such a relationship can only come into being as a result of
5   some sort of *transaction* between the parties." *Id*. at 337 (emphasis in original).
6   "Thus, a duty to disclose may arise from the relationship between seller and buyer,
7   employer and prospective employee, doctor and patient, or parties entering into any
8   kind of contractual agreement." *Id*.

9        Besides an insufficient and conclusory allegation that MSU and AOGC had a
10   special, confidential, and fiduciary relationship (FAC ¶ 59), the FAC does not
11   attempt to allege any basis for a duty to disclose. AOGC has not alleged any type of
12   transaction between itself and MSU, such as that between a seller and buyer, doctor
13   and patient, or parties entering into a contract. *See LiMandri*, 52 Cal. App. 4th at
14   337 (affirming trial court's sustaining of a demurrer for plaintiff's fraudulent
15   concealment claim where plaintiff "allege[d] no existing or anticipated contractual
16   relationship or any other relationship with [defendant]"). Indeed, the FAC does not
17   allege any contact between MSU and AOGC at all. The FAC therefore fails to state
18   a claim for fraudulent concealment under Rule 9(b). AOGC's third cause of action
19   against MSU for fraud, deceit, concealment, and deceptive practices should be
20   dismissed with prejudice.

21      **C.**    **The FAC Fails To State A Claim For Negligence**

22        The "well-known elements of any negligence cause of action" are "duty,
23   breach of duty, proximate cause, and damages." *AIG Specialty Ins. Co. v.*
24   *Phoenician LLC*, 2014 WL 4795193, at *5 (E.D. Cal. Sept. 24, 2014). AOGC's
25   negligence claim fails as a matter of law because there is no plausible allegation that
26   MSU owed AOGC a duty as a foreseeable victim and because the FAC's conclusory
27   allegations fail to plead proximate cause under a negligent hiring theory.

28

15

1    "The threshold determination that a duty is owed the plaintiff is a question of

2    law within the exclusive province of the court."  *Hooks v. S. Cal. Permanente Med.*

3    *Grp.*, 107 Cal. App. 3d 435, 443 (Ct. App. 1980).  "A determination that as a matter

4    of law no duty is owed to the plaintiff is particularly common in situations in which

5    the defendant's responsibility for the activities of third persons is involved."  *Id.*  The

6    general rule is that "one owes no duty to control the conduct of third persons."  *Id.*

7        In *Hooks*, the plaintiff sought to impose a duty on the defendant hospital to

8    control or warn against the conduct of an employee.  *Id.*  The plaintiff argued that a

9    "special relationship" existed between the employer hospital and the nurse who

10   killed the plaintiff, a woman the nurse was treating outside the hospital and who was

11   never a patient at the hospital.  *Id.*  In determining that the hospital owed no duty to

12   the deceased plaintiff, the court noted that to come within an exception to the general

13   rule that one owes no duty to control the conduct of third persons, the "relationship

14   involved must put one on notice that a specific, rather than a generalized, risk exists"

15   and "one must know that ***the target of the risk is an identifiable and foreseeable***

16   ***victim***."  *Id.* at 444.  This is because one does "not owe a duty to society because

17   [another person's] behavior may constitute a danger to *any* person."  *Id.* at 445

18   (emphasis in original).

19       Here, AOGC offers a single and limited theory of how it was harmed:  "[a]s a

20   result of the contractual relationship and subsequent affiliation with USA

21   Gymnastics, AOGC Plaintiffs [sic] business, All Olympia Gymnastics Center was

22   destroyed when negative publicity surrounding the malicious and numerous sexual

23   assaults committed by Dr. Larry Nassar ***falsely linked*** them to these deplorable acts."

24   (FAC ¶ 2.)  AOGC then alleges that "[t]he result of the negative publicity was the

25   complete and utter destruction of the finances and reputation of All Olympia

26   Gymnastics Center and the individual livelihood, careers of Artur Akopyan and

27   Galina Marinova."  *Id.*

28

16

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

These assertions fall short of alleging that MSU foresaw a "specific" risk that allegedly failing to "report, investigate, prevent, and act, with regards to [unspecified] reports of sexual abuse" (FAC ¶ 65), would result in the public "falsely linking" Nassar's actions with AOGC through a contractual relationship with USA Gymnastics.[8]   In other words, AOGC was not an "identifiable and foreseeable victim" given that (1) there are no non-conclusory allegations that MSU had contact with AOGC, much less knew it existed; and (2) the risk that someone would falsely link Nassar and AOGC together is not alleged to be (nor could reasonably be) a risk of which MSU would have had any notice.   AOGC's theory would require the Court to accept that MSU's alleged knowledge of misconduct by Nassar would cause MSU to foresee Nassar's abuse of non-MSU student Jane LM Doe and that such abuse would lead to unknown persons mistakenly and falsely linking Nassar's behavior to AOGC through its alleged contracts with USA Gymnastics, and that this false linking would be so prevalent and harmful that it would lead to AOGC's financial ruin.   To state the theory is to refute it.[9]

To the extent AOGC also asserts a negligent hiring and supervision theory, the attenuated relationship between AOGC and MSU also defeats proximate cause as a matter of law.   In *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828 (1992), a negligent hiring case, the defendant church's employee abused the plaintiff's brother, who then abused the plaintiff.   In analyzing whether the plaintiff could maintain a negligent hiring claim against the defendant church, the court noted

---

[8] As shown above, any alleged mandatory reporting requirement creates no duty of care to AOGC as a matter of law.  (*See supra* at 13.)

[9] Relatedly, AOGC's claims for punitive damages pursuant to California Civil Code section 3294 (FAC ¶¶ 50, 63, 86, 97) fail as a matter of law and should be dismissed with prejudice because "exemplary damages are allowed only to the *immediate* person injured," not to persons with alleged "speculative" follow-on injuries. *People v. Superior Court*, 9 Cal. 3d 283, 287 (1973) (citing *Hughey v. Ausborn*, 249 S.C. 470, 476, 479 (1967) (reversing award of punitive damages to father whose minor child and wife were the only persons "directly injured" in automobile accident)).

MSU'S MOTION TO DISMISS UNDER FRCP 12(B)(1), 12(B)(2), AND 12(B)(6)

1   that her claim "invokes certain policy concerns regarding the limits of liability." *Id.*

2   at 834.  While acknowledging that defendant's hiring of the employee could be seen

3   as a cause-in-fact of plaintiff's injury, the court noted that "[i]n a philosophical

4   sense, the consequences of an act go forward to eternity, and . . . any attempt to

5   impose responsibility upon such a basis would result in infinite liability for all

6   wrongful acts, and would set society on edge and fill the courts with endless

7   litigation." *Id.* at 835.  "Unlike the fact of causation . . . which . . . is often

8   hopelessly confused," "whether the defendant should be legally responsible for the

9   injury . . . is primarily a problem of law." *Id.*  In holding that the defendant was not

10  legally responsible for the plaintiff's injury, the court stated that the "theory of

11  negligent hiring here encompasses the particular risk of molestation by an

12  employee . . . not consequences involving less particular, even speculative, hazards."

13  *Id.* at 837.[10]

14      Here too, a negligent hiring and supervision theory cannot reach the "less

15  particular" and "speculative" risk that a Los Angeles gym would be "falsely linked"

16  to Nassar's misconduct.[11]  Just like the plaintiff who was not a direct victim of the

17  employee in *Evan F.*, AOGC's theory of causation is too attenuated.  Thus, AOGC

18  cannot maintain an action for negligent hiring and supervision against MSU and its

19  claim for negligence should be dismissed with prejudice.

20  **D.    The FAC Fails To State A Claim For Violation Of The Unfair**
        **Competition Law**

21

22      California's Unfair Competition Law ("UCL") provides that "[a]ny ***person***

23  who engages, has engaged, or proposes to engage in unfair competition may be

24  _____

25  [10] The court found further support in its conclusion to limit liability to an employee's
    direct acts in the fact that other jurisdictions hold there is *no* independent action for
26  negligent hiring and "deem it sufficient that the direct tortfeasor (the employee) can
    be held liable." *Id.* at 837.

27  [11] Under the terms of MSU's settlement agreement with Jane LM Doe, MSU denies
    any liability in connection with its employment of Nassar.
28

1 enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

2 "Person" within the meaning of the UCL is defined by section 17201 as "natural

3 persons, corporations, firms, partnerships, joint stock companies, associations and

4 other organizations of persons." *Id*. at § 17201.  "California courts have held that a

5 government entity is not a 'person' under the UCL" that can be sued, and therefore,

6 any such claims fail "on that ground alone." *Missud v. City & County of San*

7 *Francisco*, 2017 WL 1064984, at *18 (N.D. Cal. Mar. 21, 2017); *see also Aegis*

8 *Software, Inc. v. 22nd Dist. Agric. Ass'n*, 2016 WL 4542360, at *7 (S.D. Cal. Aug.

9 31, 2016) ("The UCL does not include state institutions in its definition of a

10 'person.'"); *Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1203 (1999) ("The

11 state is neither a natural person, partnership, corporation, association, nor other

12 'organization of persons.'"); *United Nat'l Maint., Inc. v. San Diego Convention Ctr.*

13 *Corp.*, 2010 WL 3034024, at *11 (S.D. Cal. Aug. 3, 2010) ("It is well-established

14 that the term 'person' . . . does not include government entities, even those

15 government entities operating in the fashion of a private business."); *In re Wholesale*

16 *Elec. Antitrust Cases I & II*, 2002 WL 34165887, at *14 (S.D. Cal. Dec. 17, 2002)

17 (concluding that "the United States is immune from suit under the UCL" because

18 "California courts have determined that the State, its subdivisions or agencies, and

19 other governmental entities are not 'persons' subject to suit under the UCL"), *aff'd in*

20 *part, vacated in part on other grounds, and remanded sub nom. California v. NRG*

21 *Energy Inc.*, 391 F.3d 1011 (9th Cir. 2004), *vacated in part on other grounds sub*

22 *nom. Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007).

23 As established above, MSU is an extension of the state of Michigan, and,

24 therefore, a governmental entity.  (*Supra* at 3-4.)  Thus, MSU is not a person within

25 the definition of the UCL, and this claim should be dismissed with prejudice.

26 **E.   The FAC Fails To State A Claim For Constructive Fraud**

27 "Constructive fraud is a unique species of fraud applicable only to a fiduciary

28 or confidential relationship." *Hann*, 2017 WL 10560528, at *11. "As a general

19

1  principle constructive fraud comprises any act, omission or concealment involving a

2  breach of legal or equitable duty, trust or confidence which results in damage to

3  another even though the conduct is not otherwise fraudulent." *Id*. "Thus, to succeed

4  on a claim for constructive fraud, a plaintiff must allege the following elements: (1)

5  the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3)

6  reliance; and (4) resulting injury." *Id*.

7       As shown above (*supra* at 11-13), AOGC has not alleged, and could never

8  allege, a fiduciary or confidential relationship between itself and MSU.  AOGC's

9  constructive fraud claim therefore fails altogether and should be dismissed with

10 prejudice.  *Hann*, 2017 WL 10560528, at *11 ("Because Plaintiff fails to allege the

11 first element of his constructive fraud claim, it fails in its entirety.").

12       **F.    The FAC Fails To State A Claim For Negligent Interference With**
13            **Prospective Economic Advantage**

14       "The tort of negligent interference with economic relationship arises only

15 when the defendant owes the plaintiff a duty of care." *LiMandri*, 52 Cal. App. 4th at

16 348.  Further, to adequately plead a claim for negligent interference with prospective

17 economic advantage,

18            a plaintiff must allege that (1) an economic relationship
             existed between the plaintiff and a third party which
19            contained a reasonably probable future economic benefit or
             advantage to plaintiff; (2) the defendant knew of the
20            existence of the relationship and was aware or should have
             been aware that if it did not act with due care its actions
21            would interfere with this relationship and cause plaintiff to
             lose in whole or in part the probable future economic
22            benefit or advantage of the relationship; (3) the defendant
             was negligent; and (4) such negligence caused damage to
23            plaintiff in that the relationship was actually interfered with
             or disrupted and plaintiff lost in whole or in part the
24            economic benefits or advantage reasonably expected from
             the relationship.
25

26 *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1118

27 (C.D. Cal. 2015).  Moreover, "a plaintiff seeking to recover for alleged interference

28 with prospective economic relations has the burden of pleading and proving that the

20

1 defendant's interference was wrongful by some measure beyond the fact of the
2 interference itself." *Nat'l Med. Transp. Network v. Deloitte & Touche*, 62 Cal. App.
3 4th 412, 439 (1998).

4 In support of this claim, AOGC merely asserts that "[e]ach [of MSU, USAG,
5 and USOC] knew of the relationship AOGC Plaintiffs had with their gymnasts and
6 each engaged in wrongful conduct as described in the causes of action above." (FAC
7 ¶ 91.)  But, the Court is not "required to accept as true allegations that are merely
8 conclusory," *Sprewell*, 266 F.3d at 988, and this is just such a conclusory allegation.
9 As shown above, there is no allegation as to how MSU could have known that
10 AOGC existed, much less the extent of AOGC's alleged economic relationship with
11 Jane LM Doe and other unnamed gymnasts.  Thus, AOGC has not adequately pled
12 an essential element of this claim.

13 Moreover, as discussed above, there is no plausible allegation of a relationship
14 between MSU and AOGC that could form a duty of care owed to AOGC, without
15 which there can be no negligent interference claim.  *See LiMandri*, 52 Cal. App. 4th
16 at 348.  Finally, given that the "wrongful conduct" required to establish a negligent
17 interference claim would be the alleged fraud committed by MSU (FAC ¶ 91), and
18 the alleged fraud is not pled with the requisite particularity (*supra* at 13-15), AOGC
19 has not pled the wrongful conduct element of this claim.  Thus, AOGC's claim for
20 negligent interference with prospective economic advantage must be dismissed with
21 prejudice.

22 **G.   The FAC Fails To State A Claim For Conspiracy**

23 "Under California law, there is no separate and distinct tort cause of action for
24 civil conspiracy.  Rather, it is a legal doctrine that imposes liability on persons who,
25 although not actually committing a tort themselves, share with the immediate
26 tortfeasors a common plan or design in its perpetration." *United States v. Hall*
27 *Family Tr. Dated June 8, 2001*, 2019 WL 1429572, at *3 (S.D. Cal. Mar. 29, 2019).
28 To plead conspiracy a plaintiff must allege facts indicating that "each member of the

21

1 conspiracy acted in concert and came to a mutual understanding to accomplish a

2 common and unlawful plan, and that one or more of them committed an overt act to

3 further it.  In other words, there must be a meeting of the minds before the actions of

4 the conspiracy, and it is not enough that the conspiring officers knew of an intended

5 wrongful act, they had to agree—expressly or tacitly—to achieve it." *Redmond v.*

6 *San Jose Police Dep't*, 2015 WL 4940897, at \*5 (N.D. Cal. Aug. 19, 2015).

7        There are simply no non-conclusory allegations that MSU came to a "meeting

8 of the minds" with USA Gymnastics or the United States Olympic Committee to

9 fraudulently conceal information about Nassar.  (*See* FAC ¶¶ 93-94.)   Further,

10 because this claim is not an independent cause of action, but depends on the distinct

11 tort of fraud (*see* FAC ¶¶ 93, 95), and the fraud claims were not pled with requisite

12 particularity, this claim likewise fails.  *See Entm't Research Grp., Inc. v. Genesis*

13 *Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) ("[R]egardless of whether

14 Genesis and Aerostar formed such a conspiracy, in order for ERG to have a valid

15 civil conspiracy cause of action, there must be another tort upon which ERG could

16 base its conspiracy claim.").  As such, this claim should be dismissed with prejudice

17 as against MSU.

18     **H.**    **The FAC Fails To State A Claim For Indemnification**

19        Indemnity is a contract by which one engages to save another from a legal

20 consequence of the conduct of one of the parties, or of some other person.  Cal. Civ.

21 Code § 2772.  There is simply no allegation, nor could there ever be, that AOGC had

22 any contract with MSU to indemnify AOGC against any claims brought by Jane LM

23 Doe.  Moreover, AOGC previously admitted that the $1,000,000 paid to Jane LM

24 Doe was paid entirely by their insurance carrier.  (*See* Oct. 26, 2018 Compl. at ¶ 103

25 (ECF No. 1-1); *Jane LM Doe v. Nassar et al.*, Case No. 8:18-cv-01117-JLS-KES,

26 ECF No. 50 at 11 ("On or about June 14, following the mediations, and subsequent

27 settlement discussions, Plaintiff and the AOGC Defendants reached a settlement in

28 the amount of $1 million, which is the AOGC Defendants' insurance policy limit, to

1  be funded entirely by their insurance carrier").)  Thus, AOGC did not suffer those

2  alleged damages.  As a matter of law, the entire $1,000,000 paid to Jane LM Doe is

3  subrogated to AOGC's insurer.  *See Hodge v. Kirkpatrick Dev., Inc.*, 130 Cal. App.

4  4th 540, 548 (2005) ("Under the doctrine of subrogation, when an insurer pays

5  money to its insured for a loss caused by a third party, the insurer succeeds to its

6  insured's rights against the third party in the amount the insurer paid.").

7      To the extent AOGC seeks contribution or equitable indemnity from MSU

8  stemming from *Jane LM Doe v. Nassar et al.*, Case No. 8:18-cv-01117 (FAC ¶ 111),

9  that claim is barred by this Court's good faith settlement determination pursuant to

10 California Code of Civil Procedure sections 877(b) and 877.6(c), which ordered that

11 "any claims, causes of action, complaints, cross-complaints, actions or proceedings

12 by any person or entity against MSU for contribution, equitable indemnity, partial or

13 comparative indemnity, reimbursement, or declaratory relief are barred, discharged

14 and enjoined as a matter of law."  (*See Jane LM Doe v. Nassar et al.*, Case No. 8:18-

15 cv-01117, ECF No. 114 ¶ 3.)

16      ## I.   The FAC Fails To State A Claim For Tort Of Another

17      The "tort of another" doctrine states that "[a] person who through the tort of

18 another has been required to act in the protection of his interests by bringing or

19 defending an action against a third person is entitled to recover compensation for the

20 reasonably necessary loss of time, attorney's fees, and other expenditures thereby

21 suffered or incurred."  *Prentice v. N. Am. Title Guar. Corp.*, 59 Cal. 2d 618, 620

22 (1963).  "[T]he doctrine does not create an independent cause of action, but merely

23 provides eligibility for damages once an underlying tort has been proven."

24 *Simmonds v. Catholic Healthcare W.*, 2005 WL 8162763, at *4 (N.D. Cal. July 5,

25 2005); *see also Heckert v. MacDonald*, 208 Cal. App. 3d 832, 836 (1989); *Prentice*,

26 59 Cal. 2d at 620.  Thus, because all of the previous tort-based causes of action fail

27 as a matter of law and should be dismissed with prejudice, this claim should likewise

28 be dismissed as it is dependent on the success of the tort claims.  *Mega RV Corp. v.*

1  *HWH Corp.*, 225 Cal. App. 4th 1318, 1342 (2014) ("In sum, because Mega RV had

2  no duty to HWH with regard to the servicing of the Ertzes' motor home, there was

3  no tort.  And because there was no tort, the tort of another doctrine cannot apply.") ,

4  *as modified on denial of reh'g* (May 20, 2014).

5        But even if an underlying tort had been adequately pled (which it has not), this

6  claim must be dismissed because "this is not a proper case for an award of fees as

7  damages."  *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 57 (1992),

8  *modified* (Apr. 14, 1992).  The "tort of another" doctrine is an exception to the

9  general rule that "[i]n the absence of some special agreement, statutory provision, or

10  exceptional circumstances, attorney's fees are to be paid by the party employing the

11  attorney."  *Prentice*, 59 Cal. 2d at 620 (citing Cal. Civ. Proc. Code § 1021).  As the

12  *Prentice* court noted, California Code of Civil Procedure section 1021 "undoubtedly

13  prohibits the allowance of attorney fees against a defendant in an ordinary two-party

14  lawsuit."  *Id.* The exception to that rule provided by the tort of another doctrine in

15  *Prentice*, however, "was not intended to apply to one of several joint tortfeasors in

16  order to justify additional attorney's fee damages."  *Vacco Indus., Inc.*, 5 Cal. App.

17  4th at 57.  "If that were the rule there is no reason why it could not be applied in

18  every multiple tortfeasor case with the plaintiff simply choosing the one with the

19  deepest pocket as the '*Prentice* target.'  Such a result would be a total emasculation

20  of Code of Civil Procedure section 1021 in tort cases."  *Id.*  In other words, when

21  plaintiffs  sue  "co-defendants  jointly  engaged  in  tortious  misconduct,"  it  "is

22  essentially a 'two party' lawsuit," and "[a]s *Prentice* originally emphasized, there is

23  no basis for awarding attorney's fees to a successful party."  *Id.*

24        Here, AOGC alleges that all defendants are joint tortfeasors.  (*See, e.g.*, FAC ¶

25  71 ("Defendants were … proximately and foreseeably responsible for the breaches of

26  all of the other Defendants jointly and severally.").)  Thus, AOGC "cannot simply

27  argue that one defendant's conduct caused the plaintiff to pursue an action against

28  the other."  *Elec. Elec. Control, Inc. v. LAUSD*, 126 Cal. App. 4th 601, 617 (2005).

1 AOGC's claim for attorneys' fees pursuant to the "tort of another doctrine" must
2 therefore be dismissed with prejudice.

3 **J.    The FAC Fails To State A Claim For Attorneys' Fees Pursuant To California Code Of Civil Procedure § 1021.4**

4 California Code of Civil Procedure section 1021.4 provides that "[i]n an action
5 for damages against a defendant based upon that defendant's commission of a felony
6 offense for which that defendant has been convicted, the court may, upon motion,
7 award reasonable attorney's fees to a prevailing plaintiff against the defendant who
8 has been convicted of the felony."  Cal. Civ. Proc. Code § 1021.4.  There is no
9 allegation that MSU has been convicted of a felony (because it has not been
10 convicted of a felony), so AOGC's request for attorneys' fees pursuant to this statute
11 (FAC ¶ 20) cannot be maintained.  Thus, this claim should be dismissed with
12 prejudice.

13 **CONCLUSION**

14 Based on the foregoing, MSU respectfully requests that this Court grant the
15 Rule 12(b)(1), 12(b)(2), and 12(b)(6) motions and dismiss all causes of action
16 against MSU.

17 DATED: August 16, 2019

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

18 By: _____*/s/ Amy L. Van Gelder*_____
19 Amy L. Van Gelder

20 Attorneys for Specially Appearing Defendant
MICHIGAN STATE UNIVERSITY